FILED _____ RECEIVED
_____ ENTERED _____ SERVED ON
COUNSEL/PARTIES OF RECORD
APR 1 4 2011
CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

SERVER TECHNOLOGY, INC.

    Plaintiff,

v.

AMERICAN POWER CONVERSION CORPORATION

    Defendant.

3:06-cv-00698-LRH-VPC

**ORDER**

April 14, 2011

    Before the court is American Power Conversion Corporation's ("APC") motion to compel (#'s 235 & 235-1);[1] Server Technology, Inc.'s ("STI") opposition (#236); and APC's reply (#240). The court held a hearing on the instant motion on April 4, 2011 (#248). Upon thorough review of the motion and consideration of oral argument, the court grants in part and denies in part APC's motion to compel, according to the specific guidance outlined in this order.

## I. FACTUAL & PROCEDURAL BACKGROUND

    The subject of the instant dispute is whether STI waived its attorney-client privilege and attorney work product protection when it allowed Messrs. Ryan and Main, STI's patent attorneys, and Mr. Ewing, STI's president and lead inventor, to provide deposition testimony regarding disclosures to STI's attorneys and to the U.S. Patent and Trademark Office ("PTO"), and when STI allowed Mr. Main to refresh his recollection prior to providing deposition testimony by reading a letter he drafted in 2001(#235-1, p. 2-4). Without providing an exhaustive case description, the court outlines basic facts, which are essential to comprehend the nature of the current dispute.

    STI initiated the present patent infringement action against APC, alleging in its second amended complaint that APC's products infringe four of STI's patents: United States Patent numbers 7,099,934 ("the '934 patent"); 7,043,543 ("the '543 patent"); 7,141,461 ("the '461 patent"); and

---

[1] Refers to the court's docket number.

7,702,771 ("the '771 patent") (#185). In its amended answer, APC asserts the affirmative defenses of invalidity, claiming that STI's patents failed to meet the conditions for patentability, and unenforceability, alleging that STI engaged in inequitable conduct (#208, p. 8). APC also filed several counterclaims against STI, explaining that all inventors and attorneys before the PTO have a duty to be candid, which includes the duty to disclose to the PTO "all information known to that individual to be material to the patentability of the application." *Id.* at 9.

APC's second counterclaim alleges:

> The inventors of the STI patents asserted against APC in this litigation, and the attorneys who represented those inventors and STI as the assignee on those patents, violated their duty of candor before the PTO. As a result of this inequitable conduct, each of the '934, '543, '461, and '771 patents is irreparably corrupted and unenforceable.

*Id.* at 9-10. Specifically, APC believes STI knew that APC's MasterSwitch VM, among other products, predated STI's products for which it sought patents, but failed to disclose this information to its patent prosecution attorney or to the PTO. (#240, p. 4)  Rather, APC argues, STI provided information about APC's MasterSwitch VM and other products to STI's counsel to "analyze them for a potential infringement action" against STI's then-existing patents, not to comply with STI's duty to disclose relevant prior art to its counsel and the PTO as it related to the prosecution of new patents. *Id.* APC tested this theory in its deposition questioning of STI's attorneys, Messrs. Ryan and Main, and STI's president and lead inventor, Mr. Ewing (#235-1, p. 6-11).

STI explains that APC's assertion of an inequitable conduct claim "creates a dilemma for inventors and their attorneys: in order to defend themselves, they must describe what they knew, when they knew it, and why they did or did not make certain disclosures to the USPTO" (#236, p. 2). STI further notes that "these very facts inevitably involve communications between the inventors and their attorney, many of which might be privileged," and in an effort to defend against the claim "inventors must risk having the adverse party claim they have waived the attorney-client and/or work product privilege."[2] *Id.* at 2-3.

---

[2]   APC comments that this problem is of particular concern to STI because STI used the same counsel for both patent prosecution and patent litigation on two occasions (#240, p. 14). APC explains: "This is unusual in the practice of patent law because using the same attorney for prosecution and litigation

STI believes that in the instant dispute involving three depositions, it has avoided waiving the attorney client and/or work product privilege by allowing "the inventors and their attorney to testify to *facts* that are not confidential and that were not communicated in confidence between the attorney and his clients, and that do not involve the attorney's opinions and mental impressions." *Id.* at 3 (emphasis in original). APC argues that "STI, in defending itself against the allegations of inequitable conduct, has attempted to selectively waive the attorney client privilege as to testimony that it deems helpful to its position and bar any inquiry into related testimony that is not helpful" (#235-1, p. 6). The following lines of deposition questioning are at issue in this instant dispute:

(1) Mr. Ryan's deposition testimony: Mr. Ryan testified that he advised Mr. Ewing of his duty of candor, that Mr. Ewing gave him "great assurances that tremendous effort has been made to disclose everything and more than had to be," and that Mr. Ewing assured him of this fact when Mr. Ryan was first retained and that the two men discussed the duty of candor "multiple times . . . every month or two" (#235-5, p. 3-8). Following these responses, STI's counsel directed Mr. Ryan not to answer the following question: "What is it that Mr. Ewing told you in terms of what he has done to ensure that he has complied with his Rule 56 obligations?" *Id.* at 7.

(2) Mr. Main's deposition testimony: Mr Main testified that he asked Mr. Ewing for information regarding the MasterSwitch VM, likely in December 2000, and that though Mr. Ewing did not have any information about the product at the time, Mr. Ewing indicated that he was actively seeking such information and that he would share it with Mr. Main when he obtained it (#235-3, p. 11). Mr. Main also testified that he wanted information about the MasterSwitch VM because it was "a good lead to pursue for at least additional background information, like the background information I wrote for the patent application," and that he "pumped" Mr. Ewing for information about the MasterSwitch VM because he believed Mr. Ewing was the best source of research regarding the product. *Id.* at 11, 19-20. Finally, Mr. Main also testified that his "best guess" as to his legal analysis regarding the MasterSwitch VM is that he "must not have considered it to be prior art." *Id.* at 17. Following these responses, STI's counsel directed Mr. Ryan not to answer the following question: "Did you ever have a conversation with anybody at STI regarding whether — regarding when the MasterSwitch VM was introduced into the market?" *Id.* at 16-17. STI's counsel also directed Mr. Main not to answer the following question regarding a conversation between Mr. Main and Mr. Ewing about a trade show Mr. Ewing attended, at which APC's MasterSwitch VM product was displayed: "Okay. The trade show you were mentioning earlier, do you recall when you had that communication?" *Id.* at 13-14.

(3) Mr. Ewing's deposition testimony: Mr. Ewing first testified that he gave the MasterSwitch Plus and MasterSwitch VM product manual and user guide to Mr. Main and asked him "how this product information related to his work that he was currently doing on the reexam of the '974 patent" (#240-3, p. 6). In the following deposition session, Mr. Ewing testified that he provided Mr. Ryan with information about APC's products primarily in order to comply with his duty to disclose prior art

---

leads to a number of complex conflict and potential disqualification issues." *Id.*

3

1   (#235-4, p. 6-10). After providing this testimony, STI's counsel directed Mr. Ewing
2   not to answer the following question: "Do you know, Mr. Ewing, whether or not there's a purpose recited in Exhibit 92 that's consistent with what you just described as your purpose for asking – providing information to Mr. Main? *Id.* at 12. STI's
3   counsel also directed Mr. Ewing not to answer the following question: "Did you ever discuss the MasterSwitch VM with Mr. Ryan in connection with your duty of
4   candor?" *Id.* at 15-16.

5   In addition to these specific disputed instances of what APC characterizes as STI's waiver of its privilege, APC believes STI also waived its right to protect a letter sent in 2001 by Mr. Main to Mr. Ewing, which STI gave to Mr. Main to refresh his recollection in preparation for his deposition (#235-1, p. 11). APC believes the letter is "highly probative of what Mr. Ewing and his counsel knew about the APC vertical product at least as of January 2001, and relevant to Mr. Ewing's repeated assertion that Mr. Ewing complied with his duty of candor." *Id.* at 11. Mr. Main testified that his review of the letter refreshed his memory about the existence of the letter, APC's MasterSwitch VM product, and the events that occurred in 2000-2001 (#235-3, p. 3-8). Likewise, Mr. Main testified that the letter reminded him that Mr. Ewing provided him with a copy of APC's MasterSwitch VM manual. *Id.*

During Mr. Ewing's deposition, STI noted that it produced a redacted version of the letter to APC "for the sole purpose of corroborating by using the factual information in that letter that indeed information concerning the MasterSwitch VM and the BayTech products was provided to counsel" (#235-4, p. 11). Additionally, STI repeatedly instructed Mr. Main and Mr. Ewing not to answer questions about the content of the letter (#235-1, p. 13). APC seeks an unredacted version of the letter, claiming that STI waived its right to protect the contents of the letter by allowing Mr. Main to testify to the fact that Mr. Ewing provided him with the MasterSwitch VM manual. *Id.* at 12. APC believes it should be able to view the original copy of the letter to corroborate Mr. Ewing's testimony that he provided this information to comply with his duty of candor. *Id.* at 16-17.

APC believes that Federal Rule of Evidence 612 provides an additional basis for requiring STI to disclose an unredacted copy of the January 2001 letter. *Id.* at 17. APC argues that FRE 612 requires that the document used to refresh a witness's memory before testifying be made available for inspection and cross-examination, including privileged documents, which become discoverable when they are used to refresh recollection. *Id.* at 17-18. STI argues that whether the letter must be

4

disclosed is governed by a three-part test articulated in *Parry* that balances whether the witness was coached, whether the content of the document is opinion or fact, and if the request for the document is a fishing expedition (#236, p. 14). STI also states that the 2001 letter contains "core opinion work product," which is protected from disclosure by Federal Rule of Civil Procedure 26 unless there is a showing that the witness was coached. *Id.* STI explains that there are no allegations of witness coaching in this case and that the letter clearly contains core opinion work product as it "reflects Mr. Main's opinions on the products provided by Mr. Ewing." *Id.* at 15. In APC's reply brief, it argues that the content of the letter is not core opinion work product because it speaks to a patent not at issue in the current case and, therefore, is unrelated to STI's current litigation strategy (#240, p. 17). As a result of this distinction, APC believes it should have access to an unredacted version of the letter that it may use "to inquire into facts that reveal Mr. Ewing's motivations and state of mind." *Id.*

APC requests that STI's witnesses be compelled to answer questions about communication between STI, its inventors, and its patent prosecution counsel about STI's "disclosures (and lack of disclosures) to the USPTO in the prosecution of the patents-in-suit, their compliance with the duty of candor to the USPTO, and their awareness of the APC MasterSwitch VM and BayTech products when prosecuting the patents-in-suit before the USPTO (#235-1, p. 20). APC also requests that STI, its inventors, and its patent prosecution counsel be required to answer questions about the January 8, 2001 letter drafted by Mr. Main and the materials referenced therein. *Id.* Finally, APC requests that STI be compelled to deliver an unredacted copy of the January 8, 2001 letter. *Id.*

STI urges the court to find that it "properly drew the line between factual information to which no privilege applies and privileged substantive communication," and that "the testimony by [STI's] witnesses and the redacted letter have not waived any privilege" (#236, p. 14). Further, STI argues that Mr. Main's review of the letter prior to his deposition does not waive any privilege under FRE 612. *Id.* at 16. STI also argues that, in the event the court finds that there has been a waiver, the waiver should be limited to "communications between [STI] and its inventors and their prosecution counsel regarding [STI's] disclosures to the USPTO in the prosecution of the patents-in-suit, their compliance with the duty of candor to the USPTO, and their awareness of the APC
5

MasterSwitch VM and BayTech products when prosecuting the patents-in-suit." *Id.* at 18-19.

## II. LEGAL DISCUSSION AND ANALYSIS

**A.  Discussion**

**1.  Waiver of the Attorney-Client Privilege and Work Product Protection**

Privileges available to witnesses are governed by common law principles as they are interpreted by courts. Fed. R. Evid. 501; *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (quoting FRE 501). "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co.*, 449 U.S. at 389 (citing 8 J. Wigmore, Evidence § 2290 (McNaughton rev. 1961)). The privilege is intended to "encourage clients to make full disclosure to their attorneys." *Fisher v. United States*, 425 U.S. 391, 403 (1976). The related work product doctrine is codified in Federal Rule of Civil Procedure 26(b)(3), and protects attorneys from being required to divulge materials prepared in anticipation of litigation. Fed. R. Civ. P. 26(b)(3). The attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co.*, 449 U.S. at 395. Likewise, the work product doctrine does not protect from discovery factual information contained within an attorney's papers; rather, only an attorney's "mental impressions, conclusions, opinions, or legal theories" are protected. *In re Seagate Tech.*, 497 F.3d 1360, 1375 (Fed. Cir. 2007), *cert. denied*, 552 U.S. 1230 (2008); *see United States v. Fort*, 472 F.3d 1106, 1128 (9th Cir. 2007).

Federal Rule of Evidence 502 explains that attorney-client privilege and work product protection can be waived by disclosures made during a federal proceeding if:

> (1) the waiver is intentional;
> (2) the disclosed and undisclosed communications or information concern the same subject matter; and
> (3) they ought in fairness be considered together.

Fed. R. Evid. 502. "In general, a party's voluntary disclosure of one or more privileged communications between the party and his attorney waives the privilege as to all communications between the party and his attorney on the same subject." *Starsight Telecast, Inc. v. Gemstar Dev. Corp.*, 158 F.R.D. 650, 653 (N.D. Cal. 1994). It would be unfair to allow a party to disclose facts

6

beneficial to its case, but then assert the attorney-client privilege or work product protection to refuse disclose facts adverse to its case. *Id.* (citing *Hercules, Inc. v. Exxon Corp.*, 434 F.Supp. 136, 156 (D. Del. 1977)).

Patent litigation can result in counterclaims alleging patent invalidity or inequitable conduct due to a party's purported intent to defraud the PTO. *See, e.g., Starsight Telecast, Inc.*, 158 F.R.D. at 653; *General Elec. Co. V. Hoechst Celanese Corp.*, 15 U.S.P.Q.2d 1673 (D. Del. 1990); *Lorenz v. Valley Forge Insurance Co.*, 815 F.2d 1095 (7th Cir. 1987). When parties' intent in providing documentation to the PTO is at issue, "a party should not be permitted to testify about its state of mind at the time alleged privileged communication[s] occurred, without pointing to nonprivileged evidence to substantiate its claim or allowing the opposition to discover the privileged communications themselves." *Starsight Telecast, Inc.*, 158 F.R.D. at 653; *see Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992) (discussing waiver of work product protection and finding that "opinion work product may be discovered and admitted when mental impressions are *at issue* in a case and the need for the material is compelling")(emphasis in original). On the other hand, "[a] mere denial of intent, without more, is insufficient to constitute a waiver." *Starsight Telecast, Inc.*, 158 F.R.D. at 653 (citing *Lorenz*, 815 F.2d at 1098).

In *Starsight*, an inventor provided a declaration stating that he was "personally familiar with the rules and regulations of the United States Patent Office as they affect inventors . . . [i]n particular . . . the duty to disclose information material to patentability." *Id.* at 654. The inventor also stated in his declaration that he disclosed all prior art relevant to the patent at issue to his attorney, and his attorney stated in his declaration that he submitted the art to the PTO. *Id.* Additionally, two patent attorneys testified at their depositions "regarding how the claims of the '713 Patent differ from the prior art described in conversations with, and correspondence from Starsight." *Id.* The court found that the testimony and declarations addressed "two key elements of the parties' inequitable conduct claim: knowledge of the purported prior art, and the relevancy or materiality of such art." *Id.* The court determined that "under the totality of these circumstances" the parties "have done more than merely deny Starsight's charge of inequitable conduct, and therefore they have partially waived the attorney-client privilege." *Id.* The court construed the waiver narrowly and required the discovery

of relevant facts that relate to the "particular, narrow subject matter [that has] been disclosed." *Id.* at 655.

### 2. Federal Rule of Evidence 612

Federal Rule of Evidence 612 provides:

> [I]f a witness uses a writing to refresh memory for the purpose of testifying, either--
>
> (1) while testifying, or
>
> (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice,
>
> an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. If it is claimed that the writing contains matters not related to the subject matter of the testimony the court shall examine the writing in camera, excise any portions not so related, and order delivery of the remainder to the party entitled thereto.

Fed. R. Evid. 612. The Advisory Committee "amended the Rule so as still to require the production of writings used by a witness while testifying, but to render the production of writing used by a witness to refresh his memory before testifying discretionary with the court." Advisory Committee Notes, FRE 612 (1974). Further, the Committee noted that "nothing in the Rule . . . bar[s] the assertion of a privilege with respect to writings used by a witness to refresh his memory." *Id.* However, some courts believe that "Rule 612(2) . . . permit[s] discovery of writings (or portions thereof) that a witness reviewed before his or her recollection; any privilege or work product protection against disclosure is deemed waived as to those portions so reviewed." *United States v. 22.80 Acres of Land*, 107 F.R.D. 20, 25 (N.D. Cal. 1985). "The court then may order disclosure if, in its discretion, it determines disclosure is in the interest of justice." *Id.* The court in *22.80 Acres of Land* further explained:

> [C]ourts must balance on a case-by-case basis, the competing interests present: the objective of full disclosure and ascertainment of the truth that Rule 612 and the federal discovery rules reflect, against the interest in maintaining the confidentiality of protected material, as is represented by the work product doctrine.

*Id.* at 26.

Some courts have recognized that FRE 612 "does not expressly exempt privileged matter from disclosure and, therefore, conflicts, to some extent, with Rule 26(b)(3)." *Parry v. Highlight*

8

*Indus., Inc.*, 125 F.R.D. 449, 452 (W.D. Mich. 1989). Federal Rule of Civil Procedure 26(b)(3)(A)-(B) provides:

> (3) Trial Preparation: Materials.
>
> > (A) *Documents and Tangible Things*. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
> >
> > > (I) they are otherwise discoverable under Rule 26(b)(1); and
> > >
> > > (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
> >
> > (B) *Protection Against Disclosure*. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3)(A)-(B).

While *Parry* is not controlling in this jurisdiction, the case is instructive. In addressing the potential conflict between FRE 612 and FRCP 26(b)(3), the *Parry* Court articulated a three-part test that "balance[s] the need for full disclosure against the need to protect the integrity of the adversary system." *Id.* Specifically, the test balances "whether witness 'coaching' may have occurred; whether the document reviewed constituted 'factual' or 'opinion' work product; and 'whether the request constitutes a fishing expedition.'" *Id.* (quoting *In re Joint E. & S. Dist. Asbestos Litig.*, 119 F.R.D. 4, 6 (E.D. & S.D.N.Y. 1988). In *Parry*, after *in camera* review of the documents in question, the Court found that "plaintiffs have failed to establish either a substantial need to review the documents at issue or that disclosure is necessary in the interests of justice." *Id.* The Court further determined that the "opinion letter written by defendant's counsel" and the second document, which "describe[d] the defendant's product and counsel's understanding of plaintiffs' best argument that the product infringes their patent," are both "core 'opinion' work product which is absolutely privileged against disclosure." *Id.* at 452-53.

///

B.  Analysis

　　1.　Waiver of the Attorney-Client Privilege and Work Product Protection

The parties fundamentally disagree about the nature of the disclosures made by Messers. Ryan, Main, and Ewing. APC believes the information provided by these witnesses is privileged, thus waiving the attorney-client privilege and opening the door to further cross-examination by APC. STI argues that the witnesses merely disclosed factual information, which is not subject to the attorney-client privilege and, therefore, APC is not permitted to question the witnesses further to elicit privileged information.

In addition to determining whether the information provided by STI's witnesses was merely factual, and not protected by any privilege, the court must also examine the information provided in light of the guidance in *Starsight Telecast,* which applies to cases in which inequitable conduct has been alleged, thereby calling into question parties' intent when providing information to the PTO. In other words, the court must assess whether the information provided by Messrs. Ryan, Main, and Ewing merely denied their intent to defraud the PTO, or if their testimony addresses, more substantively, their respective states of mind when disclosing information about the MasterSwitch VM and other details to plaintiff's counsel and to the PTO. According to *Starlight Telecast*, a mere denial does not require further testimony or evidence, while testimony about state of mind requires provision of nonprivileged evidence of the state of mind or the allowance of discovery of privileged information. The court begins by examining the deposition testimony of each witnesses.

Mr. Ryan testified that he received "great assurances" that any and all information that needed to be disclosed by Mr. Ewing to Mr. Ryan had indeed been provided (#235-5, p. 6). Further, Mr. Ryan testified that he and Mr. Ewing discussed the duty of candor "multiple times." *Id.* at 8. STI believes these statements simply convey "the fact that patent counsel informed Server Tech's inventors of their duties" (#236, p. 10). APC believes this information "allowed Mr. Ryan to reveal privileged information supporting a one-sided conclusion that STI had complied with the duty of candor," but prevented APC from "test[ing] the veracity of that one-sided statement" (#240, p. 7).

The court agrees with APC. These statements are not mere confirmations that counsel

discussed applicable duties with its client or that the client complied with such duties; rather, they are statements designed to impress upon the listener that not only did counsel and client comply with their duties, but they did so deliberately and thoroughly. Had Mr. Ryan simply testified that he counseled his client regarding the duty of candor, STI's characterization of the statement would be accurate - it would merely be a statement of fact. However, Mr. Ryan went beyond a factual assertion when he testified that he had received "great assurances" that all measures to comply with the duty had been taken, and that he and Mr. Ewing discussed the duty "multiple times." These statements reflect Mr. Ryan's opinion of the quality of the efforts made by himself and his client to comply with the duty of candor. Mr. Ryan's opinion is protected by the attorney-client privilege; therefore, when he elected to share his impression, he waived the privilege as to other protected information particular to the subject matter. Further, these statements go beyond mere denial of the intent not to defraud the PTO and instead are affirmative representations of Mr. Ryan's and Mr. Ewing's state of mind.

Mr. Main testified that he requested information about the MasterSwitch VM from Mr. Ewing because it was "a good lead to pursue for at least additional background information, like the background information [Mr. Main] wrote for the patent application" (#235-3, p. 11). Additionally, Mr. Main testified that he "pumped" Mr. Ewing for this information because thought he would be the best source of research on the MasterSwitch VM. *Id.* at 13-14. Mr. Main also said that Mr. Ewing was "actively looking to get more information" about the product and that the conversation likely took place in December 2000. *Id.* at 11. STI believes these statements establish the "fact that Server Tech provided the APC MasterSwitch VM manual to Mr. Main (#236, p. 10). APC believes that the "testimony is not limited to 'facts,' as STI contends, but reveals the content of several communications between Mr. Main and Mr. Ewing, including information regarding allegedly *'why'* Mr. Ewing was looking for information about the MasterSwitch VM for Mr. Main" (#240, p. 8) (emphasis in original).

Again, the court agrees with APC. Mr. Main did not simply testify that his client provided him with information regarding APC's MasterSwitch VM product. Rather, Mr. Main explained that

11

both he and Mr. Ewing were actively seeking information about the product and Mr. Main further detailed why he wanted information about the MasterSwitch VM. Again, Mr. Main's testimony goes beyond simply stating that he did not intend to defraud the PTO and, instead, explains his opinion of the value and relevance of the MasterSwitch VM. APC is entitled to corroborate Mr. Main's assertions about his intended uses of the information in or around December 2000. However, Mr. Main's testimony does not open the door for APC to discover the details of communication between STI employees and Mr. Main regarding when the MasterSwitch VM product was introduced to the market or discussion about the 1999 tradeshow. Mr. Main only called into question his state of mind and intended uses when he requested information about the MasterSwitch VM from Mr. Ewing in or around December 2000. He did not open the door to a full exploration of his communications about the product with other individuals or at other times.

Mr. Main also testified that his "best guess" as to his legal analysis regarding the MasterSwitch VM is that he "must not have considered it to be prior art" (#235-3, p. 17). APC argues that Mr. Main's speculation as to why he did not disclose the MasterSwitch VM to the PTO "reveals mental impressions of Mr. Main, and implicates the advice of counsel that Mr. Main may have given when he was prosecuting the STI patents" (#240, p. 10). The court agrees with APC that Mr. Main's legal analysis is not simply a factual assertion, but rather it is his recollection that his opinion at the time was that the MasterSwitch VM was not prior art. Further, Mr. Main's testimony is not simply a denial that he did not intend to deceive the PTO office, but again an affirmative representation of his state of mind, which was that the MasterSwitch VM product was not relevant as prior art. APC should be, and was, permitted to test Mr. Main's recollection of his opinion. APC asked several follow up questions in deposition about Mr. Main's decision that the MasterSwitch VM was not prior art. Mr. Main answered that had he considered it to be prior art he would have disclosed it to the PTO, so his basis for the statement that it was not prior art was the fact that he did not include it in his application to the PTO. The court finds that this response, in combination with the redacted version of the letter provided by STI, discussed below, adequately answers APC's questions about Mr. Main's treatment of the information he received from Mr. Ewing about the

MasterSwitch VM and his intent, to the extent he can recall, in not disclosing the information to the PTO.

Mr. Ewing testified that he provided information about APC's products to Mr. Main in order to comply with his duty of candor (#235-4, p. 6-10). However, Mr. Ewing also testified that he turned over a MasterSwitch Plus and MasterSwitch VM product manual and user guide to Mr. Main and asked him "how this product information related to his work that he was currently doing on the reexam of the '974 patent" (#240-3, p. 6). APC believes this testimony "was intentionally structured to reveal not merely 'facts,' but the content of and alleged reasons and motivations for communications between attorney and client." *Id.* STI says this testimony simply establishes the facts that "Server Tech obtained an APC MasterSwitch Plus, which included a compact disk that included a manual for the MasterSwitch VM," and the fact that these items were provided to Mr. Main by STI (#236, p. 10).

The court agrees with APC that Mr. Ewing expressed more than the fact that he disclosed these items to Mr. Main. Rather, he disclosed his intentions in disclosing this information, which includes his belief that he was required to disclose the information to comply with the duty of candor and his statement that he wanted Mr. Main's opinion on how the information related to his ongoing work on the reexamination of the '974 patent. As this information speaks to Mr. Ewing's intentions, it more than a simple factual assertion that he provided the information. It is two affirmative statements, albeit somewhat conflicting, of Mr. Ewing's state of mind. As such, APC is entitled to test the veracity of the statement by requesting confirmation of Mr. Ewing's intention in providing this information to Mr. Main.

With regard to Mr. Main's and Mr. Ewing's testimony, APC argues that Mr. Main's review of the January 2001 letter he drafted, in combination with Mr. Main and Mr. Ewing's testimony, waived any attorney-client privilege or work product protection STI has over the content of the letter. As a result, APC believes STI must disclose an unredacted version of the January 2001 letter. The court now addresses waiver of work product protection under FRCP 26(b)(3) to determine if: (1) mental impressions are at issue in the case, and (2) APC's need for an unredacted verison of the

letter is compelling. *Holmgren*, 976 F.2d at 577.

The court agrees, as noted above, that APC is entitled to test the veracity of the following statements: (1) Mr. Ryan's statements about the quality of the efforts made by himself and his client to comply with the duty of candor, (2) Mr. Main's statements about his state of mind and intended uses when he requested information about the MasterSwitch VM from Mr. Ewing in or around December 2000, and (3) Mr. Ewing's statements about his state of mind in providing the MasterSwitch Plus and MasterSwitch VM manual to Mr. Main. APC's counterclaim of inequitable conduct calls into question the state of mind of STI's patent counsel and inventors. Likewise, the testimony of Messrs. Ryan, Main, and Ewing, which includes affirmative representations of their respective states of mind, put squarely at issue their intent in disclosing information about the MasterSwitch VM to the PTO. Therefore, the court finds that mental impressions are at issue in the instant dispute. However, the court does not agree that APC has demonstrated a compelling need for the unredacted version of the letter. *In camera* comparison of the redacted and unredacted versions of Mr. Main's January 2001 letter reveal that all relevant portions of the letter remain unredacted by STI. Generally speaking, the redacted portions of the letter include attorney work product, impressions, and opinions not applicable to APC's allowable lines of inquiry - namely, the intent of Mr. Ewing in providing information about the MasterSwitch VM to his patent counsel and the intent of the Messrs. Ryan and Main in reviewing the information provided. Through the deposition questioning that has already occurred, any future questioning of Messrs. Ryan, Main, and Ewing conducted pursuant to this Order, and the unredacted portions of the January 2001 letter, APC has the materials it needs to prepare its case.

2.   **FRE 612**

Aside from its argument that STI waived its right to protect the January 2001 letter discussed above, APC contends that FRE 612 requires STI to disclose an unredacted copy of the January 2001 letter, which Mr. Main read to refresh his recollection prior to his deposition testimony. STI believes that the committee notes to FRE 612 and *Parry* - which is not binding, but is instructive - prevents STI from being required to disclose "core opinion work product," which is protected by FRCP

14

26(b)(3).

As an initial matter, STI relies heavily on *Parry*, which is a Western District of Michigan case. The court finds this case informative, but also feels that it is critical, in the absence of relevant Ninth Circuit Court of Appeals law, to include the guidance of other District Courts within the Ninth Circuit regarding FRE 612. To that end, the court not only reviewed *Parry*, but also considered *United States v. 22.80 Acres of Land*, 107 F.R.D. 70 (N.D. Cal. 1985). The court finds that these cases do not conflict, but rather support the same conclusion, which is that FRE 612 does not mandate the disclosure of documents used to refresh a witnesses recollection prior to deposition testimony. The mechanism by which each court arrives at this conclusion is not identical. *Parry* articulates a three-part test, which courts should use in determining whether or not to determine if privilege has been waived by the party reviewing the document. The test weighs whether witness coaching occurred, whether the document includes factual or opinion work product, and whether the request for the document is a fishing expedition. In *22.80 Acres of Land*, the U.S. District Court for the Northern District of California finds that use of a document to refresh a witness's recollection waives privilege as to the portions reviewed, but also states that courts may use their discretion to determine if it is in the interests of justice to require disclosure of all or part of the document. Further, the court states that it is necessary to balance the FRE 612 interest in discerning the truth against the need to protect the confidentiality of attorney work product.

Regardless of which test or standard is employed, this court agrees with STI that production of the unredacted version of the letter is not required and, in the instant dispute, is not necessary. The court conducted an *in camera* review of the documents and finds that the unredacted portions of the January 2001 letter address the portions of Messrs. Main's and Ewing's deposition testimony that are of concern to APC. APC seeks to explore STI's defense to APC's inequitable conduct claim, which is "to construct an argument that Mr. Ewing did all he possibly could to fulfill his duty of candor to the USPTO," thereby lacking the requisite state of mind for an inequitable conduct claim. The court believes that APC has access to the relevant portions of the January 2001 letter referenced by Messrs. Main and Ewing in their respective depositions; therefore, it is not in the

15

interests of justice to require STI to disclose an unredacted version. Further, the remaining portion of the letter reveals attorney opinions and litigation strategies. Absent a showing that STI coached its witnesses, the Parry balancing test also weighs in favor of not requiring STI to disclose an unredacted copy of the letter, which includes extensive attorney work product.

### III. CONCLUSION

The court finds that STI waived its attorney-client privilege with respect to the following narrow issues: (1) Mr. Ryan's statements about the quality of the efforts made by himself and his client to comply with the duty of candor, (2) Mr. Main's statements about his state of mind and intended uses when he requested information about the MasterSwitch VM from Mr. Ewing in or around December 2000, and (3) Mr. Ewing's statements about his state of mind in providing the MasterSwitch Plus and MasterSwitch VM manual to Mr. Main. APC is permitted to inquire into the veracity of these statements by conducting further deposition questioning or by requesting that STI provide other evidence to support these statements. APC is not permitted to further question STI, its inventors, and its patent prosecution counsel about the unredacted portions of the January 8, 2001 letter drafted by Mr. Main and the materials referenced therein. Further, APC is not entitled to receive an unredacted copy of the January 8, 2001 letter.

**IT IS THEREFORE ORDERED** that APC's motion to compel (#235) is **GRANTED** in part, and **DENIED** in part.

**IT IS FURTHER ORDERED** that the parties shall meet and confer to develop an amended discovery schedule for this case. The parties shall submit the schedule to this court for approval.

**IT IS SO ORDERED.**

DATED: April 14, 2011.

_Valerie P. Cooke_
UNITED STATES MAGISTRATE JUDGE