UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SERVER TECHNOLOGY, INC., a Nevada corporation, | ) ) ) |
| Plaintiff and Counter-defendant, | ) ) ) |
| v. | ) ) |
| AMERICAN POWER CONVERSION CORPORATION, a Massachusetts corporation, | ) ) ) ) |
| Defendant and Counter-claimant | ) ) |

3:06-CV-00698-LRH-VPC

ORDER

Before the court is defendant and counter-claimant American Power Conversion Corp.'s ("APC") motion to strike plaintiff and counter-defendant Server Technology, Inc.'s ("STI") inequitable conduct affirmative defense. Doc. #221.[1] STI filed an opposition (Doc. #226) to which APC replied (Doc. #229).

**I.    Facts and Background**

Plaintiff and counter-defendant STI designs and manufactures products relating to computerized data center power management including intelligent power distribution systems. Power management systems enable a user to locally or remotely control and monitor the power supply to appliances connected to a computer network, such as computers, servers, routers, and

---

[1] Refers to the court's docket number.

1  other electronic equipment. Unlike ordinary power strips, intelligent power strips feature relays and
2  control circuitry that allow the strip to power-on and power-off individual outlets. The Patent and
3  Trademark Office ("PTO") has issued STI several patents for power management systems and
4  methods including the patents in suit United States Patents number 7,099,934; 7,043,543; and
5  7,141,461.[2]

6  Defendant and counter-claimant APC likewise designs and manufactures power
7  management systems. The Patent and Trademark Office ("PTO") has issued APC several patents
8  including the patents in suit United States Patents number 6,741,442; and 7,141,891. Like the STI
9  patents, APC's patents describe a group of power outlets into which electronic equipment can be
10 plugged into for receiving electrical power.

11 On December 18, 2006, STI initiated the present patent infringement action against APC
12 alleging that APC's products infringe its '934, '543, and '461 patents. Doc. #1. After the court's
13 claim construction order, STI filed an amended complaint for patent infringement. Doc. #185. In
14 response, APC filed an amended answer and counterclaims against STI alleging that various STI
15 products infringe its '442 and '891 patents. Doc. #206.

16 On February 1, 2011, STI filed its answer to APC's counterclaims. Doc. #215. As part of its
17 answer, STI raised the affirmative defense of inequitable conduct. *Id*. Thereafter, APC filed the
18 present motion to strike STI's inequitable conduct affirmative defense. Doc. #221.

19 **II.    Legal Standard**

20 A motion to strike an affirmative defense is brought pursuant to Federal Rule of Civil
21 Procedure 12(f), under which a court may strike "from any pleading any insufficient defense or any
22 redundant, immaterial, impertinent or scandalous material." FED. R. CIV. P. 12(f). Affirmative
23 defenses are governed by the same pleading standard as complaints. *Wyshak v. City Nat'l Bank,*

---

[2] This order will hereinafter refer to each patent as the "'XYZ patent," where XYZ refers to the last three digits of the number identifying the patent (e.g., the '934 patent).

607 F.2d 824, 827 (9th Cir. 1979) ("The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense.").

To plead inequitable conduct in a patent infringement action, an accused infringer must allege that (1) an individual associated with the prosecution of the patent application at issue made affirmative misrepresentations of affirmative fact, failed to disclose material information, or submitted false material information; and (2) the individual acted with the specific intent to deceive the Patent and Trademark Office ("PTO"). *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008). Because the affirmative defense of inequitable conduct sounds in fraud, the affirmative defense must be pled with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. *Cent. Admixture Pharmacy Servs., Inc. v. Advances Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007); *see also, Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003) ("[I]nequitable conduct, while a broader concept that fraud, must be pled with particularity [under Rule 9(b)'s heightened pleading requirements].").

"[I]n pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen Co. v. Wal-Mart Stores*, 575 F.3d 1312, 1327 (9th Cir. 2009).

### III. Discussion

APC argues that STI fails to allege inequitable conduct in accordance with the rigid pleading requirements of Rule 9(b). *See* Doc. #221. Specifically, APC argues that STI's allegations fail to allege the requisite who, what, where, when, and how of the alleged material omissions or misrepresentations.

In its inequitable conduct affirmative defense, STI makes the following allegations:

> APC's '442 Patent is unenforceable as a result of APC's inequitable conduct in obtaining those patents.
> Among other reasons, the applicants and/or attorney during prosecution of the

3

>application that led to the '442 Patent made misrepresentations to the patent examiner by failing to submit to the examiner information concerning APC's "Masterswitch Plus Power Control Unit" and systems, which embodied material elements of the subject matter of one or more of the claims of the '442 Patent, including by way of example and not limitation, claims 20 and 21 of the patent.
>   APC publicly used, offered for sale, sold, and described in one or more printed publications that Masterswitch Plus Power Control Unit and systems within the United States more than one year prior to the date of the application that led to the '442 Patent, October 13, 2000, thus rendering the Masterswitch Plus Power Control Unit and relates [sic] systems and uses prior art to the '442 Patent under 35 U.S.C. §§ 102(b) and/or 103.
>   At least as of the date of the application that led to the '442 Patent, October 13, 2000, the applicants and/or their attorney has specific knowledge of the Masterswitch Plus Power Control Unit.
>   Further, at such time, the applicants and/or their attorney likely had knowledge of other prior art products, systems, and/or activities such as prior invention by another, on sale, publication, or use of certain daisy-chainable STI Sentry Commander and Sentry Ambassador systems, that included material elements of the subject matter of one or more of the claims of the '442 Patent, including by way of example and not limitation, claims 20 and 21 of the '442 Patent.
>   On information and belief, the applicants and/or their attorney intentionally withheld information concerning the Masterswitch Plus Power Control Unit, systems, and/or uses, and/or those certain Sentry Commander and Sentry Ambassador products, systems, and/or uses from the examiner to prevent the examiner from considering such information as prior art to the application that led to the '442 Patent, and to procure issuance of the '442 Patent.

Doc. #215, p.17.

   The court has reviewed the documents and pleadings on file in this matter and finds that STI has failed to allege inequitable conduct with the requisite particularity. First, STI only alleges that "the applicants and/or their attorney" withheld material information from the PTO. *See* Doc. #215, p.17. These allegations do not identify a specific person who knew of and withheld relevant and material prior art references. Such a generalized allegation is insufficient to sufficiently plead the "who" under Rule 9(b). *See e.g., Exergen*, 575 F.3d at 1329 (holding that the allegation "Exergen, its agents and/or attorneys" fails to name a specific individual and, as such, fails to identify the "who" in accordance with Rule 9(b)).

   Second, STI fails to identify the specific prior art that was withheld from the PTO and where the relevant claim limitations are found within that prior art. Although STI alleges that APC

4

failed to submit the PTO with information concerning its "Masterswitch Plus Power Control Unit" and related systems, STI does not identify which claims contained with that alleged prior art reference would either limit the '442 patent or prevent its patentability had it been divulged to the PTO. Further, STI does not identify where in the "Masterswitch Plus Power Control Unit" prior art the material claims language could be found.

Third, at no point does STI allege why the "Masterswitch Plus Power Control Unit" and related systems is material to the '442 patent or how a patent examiner would use the prior art in assessing the patentability of the '442 patent.

Finally, STI fails to allege sufficient facts to infer a specific intent to deceive the PTO. Because no person is identified as having knowledge of the materiality of the prior art, there is no individual whose intent could be examined by the court to infer an intent to deceive. Further, there are no allegations from which the court could reasonably infer that an individual who made the material omissions or misrepresentations had knowledge of the falsity of any statements or omissions. Therefore, based on the allegations in STI's amended answer, the court finds that STI has failed to allege inequitable conduct with particularity as required by Rule 9(b).

As an alternative to striking its inequitable conduct defense, STI requests leave to amend its answer. *See* Doc. #226. A party may amend its pleadings after a responsive pleading has been filed by leave of court. FED. R. CIV. P. 15(a)(2). Further, a court may modify a scheduling order to allow for the filing of an amended pleading "for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). Leave of court to amend should be freely given when justice so requires and when there is no undue delay, bad faith, or dilatory motive on the part of the moving party. *See Wright v. Incline Village General Imp. Dist.*, 597 F.Supp.2d 1191 (D. Nev. 2009); *DCD Programs, LTD v. Leighton*, 883 F.2d 183 (9th Cir. 1987).

Here, the court finds that there is no undue delay, bad faith, or dilatory motive on behalf of defendants in requesting leave to amend their answer. Further, the court finds that APC would not

be prejudiced by allowing amendment. Finally, although STI failed to attach a copy of the proposed amended answer as required by LR 15-1, the court finds that STI has raised several factual allegations in its opposition that would comport with the heightened pleading requirement of Rule 9(b). Specifically, STI states that "the applicants and/or their attorney" refers to the named co-inventors of the '442 patent, John McNally and Daniel Rohr. Further, STI states that the "Masterswitch Plus Power Control Unit," which was known to both John McNally and Daniel Rohr who co-invented that product, constitutes material prior art because its build specifications place specific limitations on claims 20 and 21 of the '442. Therefore, the court finds that STI can allege sufficient facts to warrant an amended pleading and that amendment would not be futile. Accordingly, STI shall be granted leave to amend its answer.

IT IS THEREFORE ORDERED that defendant/counter-claimant's motion to strike (Doc. #221) is DENIED.

IT IS FURTHER ORDERED that plaintiff/counter-defendant shall have up to and including ten (10) days after entry of this order to file an amended answer.

IT IS SO ORDERED.

DATED this 6th day of May, 2011.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE