UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SERVER TECHNOLOGY, INC., ) <br> ) <br> Plaintiff and Counterdefendant, ) <br> ) <br> v. ) <br> ) <br> AMERICAN POWER CONVERSION ) <br> CORPORATION, ) <br> ) <br> Defendant and Counterclaimant ) | 3:06-CV-00698-LRH-VPC <br><br> ORDER |

Before the court is plaintiff and counter-defendant Server Technology, Inc.'s ("STI") motion for summary judgment on defendant and counter-claimant American Power Conversion Corp.'s ("APC") fourth counterclaim for patent infringement. Doc. #277.[1] APC filed an opposition (Doc. #296) to which STI replied (Doc. #320).

**I.  Facts and Procedural History**

   **A.  Procedural Overview**

Plaintiff and counter-defendant STI manufactures intelligent power distribution devices. STI brought the underlying patent infringement action against defendant and counter-claimant APC who also manufactures intelligent power distribution devices. In response, APC has counterclaimed that STI is infringing one of its own patents: United States Patent number

---

[1] Refers to the court's docket number.

6,741,442 ("the '442 patent").[2]

On April 13, 2010, the court issued a *Markman* order construing various disputed terms of the '442 patent. *See* Doc. #163. Thereafter, STI filed the present motion for summary judgment arguing that its allegedly infringing power distribution devices do not infringe APC's '442 patent. Doc. #277. On February 23, 2012, the court heard argument on the motion.

**B. The '442 Patent**

APC's '442 patent is entitled "Intelligent Power Distribution System" and discloses a method of distributing power through an intelligent power distribution device, also referred to as "intelligent plugstrips" or "PDUs." Like an ordinary electrical plugstrip used in a home or office, intelligent plugstrips are primarily intended to distribute power from a wall outlet through an input power cord to a number of power outlets. But unlike ordinary plugstrips, intelligent plugstrips are intended for large scale applications such as commercial data centers and include several enhanced features. These enhanced features enable a user to locally or remotely control and monitor the power supply to appliances connected to the intelligent plugstrip through various internal relay controls as described in the patent.

The '442 patent has both apparatus and method claims. The apparatus claims describe an intelligent power distribution system that manages power consumption to minimize the tripping of the circuit breaker providing electrical power to the system. Doc. #280, Exhibit 13, '442 patent, Col. 2:10-13. The method claims disclose direct steps for energizing, programming, and controlling the system. Doc. #280, Exhibit 13, '442 patent, Col. 3:35-42. Claim 10, the basis for APC's patent infringement counterclaim, is a method claim and specifically outlines:

> A power distribution method comprising the steps of:
> [1] energizing an input power line to power-up a first group of power outlets on a power distribution system;

---

[2] A copy of the '442 patent is attached as Exhibit 13 to STI's appendix of exhibits in support of STI's motions for summary judgment. Doc. #280, Exhibit 13.

2

[2] initializing the power distribution system, initializing including the steps of:
  [2a]   programming a normal-threshold value into the power distribution system;
  [2b]   programming an overload-threshold value into the power distribution system;
  [2c]   programming an under-voltage threshold value into the power distribution system; and
[3] controlling a plurality of relays to actuate to a conductive state in accordance with a predetermined sequence and a predetermined delay to sequentially power-on a second group of power outlets on the power distribution system.

Doc. #280, Exhibit 13, '442 patent, Col. 10:40-56.

## II.   Legal Standard

### A.   Summary Judgment

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v.*

*Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute; there must be evidence on which a jury could reasonably find for the party. *See id.* at 252.

### B. Patent Infringement

A district court analyzes a patent infringement claim in two steps: (1) construing the claims as a matter of law, and (2) applying the properly construed claims to the accused invention. *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1362 (Fed. Cir.1999); *EMI Group N. America, Inc. v. Intel Corp.*, 157 F.3d 887, 891 (Fed. Cir. 1998). Infringement can occur either literally or under the doctrine of equivalents. *Kahn v. Gen'l Motors Corp.*, 135 F.3d 1472, 147-78 (Fed. Cir. 1998). In this matter, APC's counterclaim against STI alleges only literal infringement of claim 10 of the '442 patent. Literal infringement occurs when, every limitation set forth in a patent claim is found in an accused product or process. *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991). The smallest deviation from the literal claim language precludes infringement. *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001).

### III. Discussion

In its motion for summary judgment, STI moves this court for an order that its allegedly infringing devices do not infringe claim 10 of APC's '442 patent as a matter of law. *See* Doc. #277. Specifically, STI argues that summary judgment is warranted because its devices do not perform all of the express method steps outlined in claim 10, namely (1) programming an under-voltage threshold value into the power distribution device, and (2) energizing a group of power outlets by

1  providing power to the input line.

2  In opposition, APC argues that STI's devices literally infringe claim 10 because the devices
3  contain (1) a "programmed" under-voltage threshold value as that term was construed in the court's
4  claim construction order; and (2) a group of power outlets that are energized by providing power to
5  the device. *See* Doc. #296.

6  The court has reviewed the documents and pleadings on file in this matter, as well as the
7  arguments and submission by counsel at the February 23, 2012 hearing, and finds that STI is
8  incorrect that its devices are not "programmed" with an under-voltage threshold value within the
9  meaning of the court's claim construction order. As discussed below, STI's devices include a
10 programmed under-voltage threshold value as part of the devices' hardware components.

11 However, the court also finds that STI is correct in that its allegedly infringing devices do
12 not perform the energizing sub-step as required by claim 10 of the '442 patent. As STI's devices do
13 not perform *all* of the express method steps outlined in claim 10, there is no literal infringement of
14 the '442 patent. Accordingly, the court shall grant STI's motion for summary judgment.

15 **A. Programming Sub-step**

16 In its motion, STI first argues that its allegedly infringing devices do not meet claim 10's
17 method step of "programming an under-voltage threshold value into the power distribution system"
18 as required by sub-step 2c. *See* Doc. #277. It is undisputed that STI's intelligent plugstrips use a
19 hardware component to set the under-voltage threshold limit. As such, STI contends that utilizing
20 such a hardware component is not "programming" because programming as used in the '442 patent
21 necessarily requires inputting a value into a software application. The court disagrees.

22 The court previously construed the meaning of "programming" as used in sub-steps 2a–2c
23 in the court's claim construction order. *See* Doc. #163. In construing the term, the court noted that
24 the parties agreed that the term involves "entering a value into the system," but disagreed "on who
25 performs the programming." *Id*. at 32-33. STI contended that the '442 patent contemplated

26

5

programming by only the operator of the system while APC argued that programming was not so limited and included manufacturer, operator, and end-user programming. *Id*. The court agreed with APC, finding that "programming necessarily includes participation by the manufacturer." *Id.* at 33-34. The court then went on to construe "programming" broadly to mean "inputting a value into the power distribution system." *Id.* at 34.

Following the court's construction, method substep 2c simply requires the inputting of an under-voltage threshold value into the intelligent plugstrip. There is no limitation that the value be inputted into a separately designed software application as STI argues. Further, the court, in response to a previous motion for summary judgment on the issue of non-infringement of the '442 patent filed by STI (Doc. #72), has already found that "the court's construction of programming includes and contemplates manufacturer pre-set components as consistent with 'programming' a value in the power distribution system." Doc. #165, p.4-5. Thus, the court has already ruled that the '442 specification contemplates exactly the kind of hardware programming that STI concedes its devices utilize and now tries to exclude from the scope of the claim.

The court is not otherwise persuaded by STI's latest argument that programming requires inputting a value into software. STI's proffered limitation would contradict the specific disclosures in the '442 patent specification that the manufacturer could pre-program the device with a component containing an under-voltage threshold value of 4.6 volts in the course of assembling the unit (the same hardware component STI's devices use). *See* Doc. #280, Exhibit 13, '442 patent, Col.7:8-20. Therefore, the court finds that STI's accused devices are "programmed" to contain an under-voltage threshold value, and as such, the devices perform the express method step outlined in sub-step 2c of claim 10 of the '442 patent.

///

///

///

6

### B. Energizing Sub-step

STI also argues that none of its allegedly infringing devices perform the energizing method step as outlined in step 1 of claim 10 because its devices do not contain a first group of power outlets that are energized simply by providing power to the intelligent plugstrip. *See* Doc. #277. The court agrees.

Method step 1 of claim 10 requires "energizing an input power line to power-up a first group of power outlets on a power distribution system." Doc. #280, Exhibit 13, '442 patent, Col. 10:41-42. The court interprets this method step to require that when power is provided to the device through its input line, a first group of power outlets is automatically and immediately powered-up with no intervening step.

The plain language of the claim supports the court's interpretation. First, the plain language of the claim describes a direct cause and effect relationship between energizing the input line (for example, by plugging in the intelligent plugstrip into a wall outlet) and powering-up a group of outlets. Second, the plain language of step 1 does not provide for any intermediate step between providing power to the intelligent plugstrip and the powering-up of the outlets like actuating a relay.

The court's interpretation of step 1 is further supported by the specification which states that the first group of power outlets "can remain energized as long as power is provided to the power strip by the ac power source over input power line." Doc. #280, Exhibit 13, Col. 5:49-54.

Finally, the court's interpretation is supported by the contrast between method step 1 and method step 3. Method step 3 of the claim 10 describes a second group of power outlets that are controlled through the use of relays and powered-up only when the relays are actuated to a conductive state. Doc. #280, Exhibit 13, '442 patent, Col. 10:52-56. Thus, claim 10 distinguishes between outlets that are powered up merely through the provision of power through the input power line (step 1) and those outlets that have associated relays to open and close a switch to

7

control the flow of power (step 3).

Because the court interprets method step 1 to require a group of outlets that are immediately and automatically powered-up by providing power to the intelligent plugstrip, the issue before the court is whether STI's allegedly infringing devices contain such a group of outlets. Here, it is undisputed that STI's allegedly infringing devices contain only a single group of power outlets that are powered-on by sequentially actuating the relays that control each outlet. The devices do not have a separate group of outlets that are powered up simply by providing power to the device as required by method step 1. As the automatically powered up outlets are absent in the STI products, the court finds that STI's devices do not literally infringe method step 1. *See Telemac Cellular Corp.*, 247 F.3d at 1330 (holding that the smallest deviation from the literal claim language precludes infringement). Therefore, STI is entitled to summary judgment that its devices do not infringe claim 10 of the '442 patent, and the court shall grant its motion accordingly.

IT IS THEREFORE ORDERED that STI's motion for summary judgment (Doc. #277) is GRANTED. The clerk of court shall enter judgment in favor of STI and against APC as to APC's fourth counterclaim for patent infringement arising under claim 10 of the '442 patent.

IT IS SO ORDERED.

DATED this 28th day of September, 2012.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE