1
2
3
4
5
6                    UNITED STATES DISTRICT COURT

7                         DISTRICT OF NEVADA

8                               * * *

9   SERVER TECHNOLOGY, INC.,                )
                                            )
10          Plaintiff/Counterdefendant,     )        3:06-CV-00698-LRH-VPC
                                            )
11   v.                                     )
                                            )        ORDER
12   AMERICAN POWER CONVERSION              )
     CORPORATION,                           )
13                                          )
            Defendant/Counterclaimant       )
14   _____)

15          Before the court is defendant American Power Conversion Corp.'s ("APC") motion for

16   reconsideration of the court's order on summary judgment (Doc. #381[1]). Doc. #385. Plaintiff

17   Server Technology, Inc. ("STI") opposed the motion (Doc. #389), to which APC replied

18   (Doc. #394). STI then filed a sur-reply. Doc. #417.

19   **I.      Facts and Procedural History[2]**

20          Plaintiff STI manufactures intelligent power distribution devices. STI brought the

21   underlying patent infringement action against defendant APC, alleging APC's product designs

22   infringe three of STI's patents: United States Patents numbers 7,043,543 ("the '543 patent"),

23

24   _____

25          [1] Refers to the court's docket number.

26          [2] This action has an extensive factual and procedural history. For a complete review of this action's
     history and of the patents at issue, see the court's claim construction order (Doc. #163).

7,141,461 ("the '461 patent"), and 7,702,771 ("the '771 patent").[3] Specifically, STI alleges APC's various products infringe claims 1–3, 6, and 15–17 of the '543 patent; claims 1, 3, and 8 of the '461 patent; and claims 15–17 of the '771 patent.

On August 30, 2011, APC filed its motion for summary judgment. Doc. #287. The court granted the motion in part, finding APC's accused products designs do not literally infringe claims 1, 3, and 8 of the '461 patent. Doc. #381. However, the court also denied the motion in part, finding that the '543 patent was not invalid as anticipated, nor were the '543 and '771 patents invalid as obvious. *Id.* In response to the court's finding that STI's '543 patent was not invalid as anticipated under Title 35, United States Code, Section 102, APC filed the present motion to reconsider. Doc. #385.

## II.   Legal Standard

APC brings its motion to reconsider pursuant either to Federal Rule of Civil Procedure 59(e) or to Federal Rule of Civil Procedure 60(b). A motion under Rule 59(e) or 60(b) is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 887, 890 (9th Cir. 2000). The two rules provide that a district court may reconsider a prior order where the court is presented with newly discovered evidence, an intervening change of controlling law, manifest injustice, or where the prior order was clearly erroneous. Fed. R. Civ. P. 60(b)(1)–(6); *United States v. Cuddy*, 147 F.3d 1111, 1114 (9th Cir. 1998); *School Dist. No. 1J, Multnomah County v. AcandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

---

[3] STI's patents in suit (the '543, '771, and '461 patents) describe and relate to intelligent power distribution devices, also referred to as "intelligent plugstrips" or "PDUs." Like an ordinary electrical plugstrip used in a home or office, intelligent plugstrips are primarily intended to distribute power from a wall outlet through an input power cord to a number of power outlets. But unlike ordinary plugstrips, intelligent plugstrips are intended for large scale applications, such as commercial data centers, and include several enhanced features. These enhanced features allow a user, through various internal relay controls, to locally or remotely control and monitor the power supply to connected appliances, such as computers, servers, routers, and other electronic equipment.

**III.     Argument**

In its motion, APC argues the court erred in its claim construction analysis by finding that claim 1 of the '543 patent "discloses a fully integrated plugstrip," and thus, is not anticipated by APC's prior MasterSwitch VM ("MSVM") product design.[4] First, APC argues the '543 patent does not disclose a fully integrated, one-piece plugstrip, but instead, discloses a two-piece design in which the "current-related information reporting system" of claim 1 may be separate from the plugstrip housing. *See* Doc. #385. Second, APC argues the court erroneously interpreted the transitional term "comprising" as used in claim 1 to mean that all of the listed limitations of claim 1 must be physically contained within the plugstrip. APC contends, in contrast, that the term "comprising" means only that limitations of claim 1 must be included in the overall product design, but not necessarily "physically contained within" the plugstrip. *Id*. The court addresses each argument in turn.

**A. Plugstrip**

In its prior summary judgment order, the court found the '543 patent clearly illustrates the plugstrip as a single, fully integrated device. Doc. #381 at 10:13–14. The court relied on four factors in this decision: (1) the patent's "Vertical-Mount Electrical Power Distribution Plugstrip" title, (2) the patent summary's references to the device as a "power distribution plugstrip," (3) the patent's disclosure describing the device as a fully integrated plugstrip, and (4) the plugstrip's design in Figure 1 of the patent illustrates the plugstrip as a single device containing all design features. *Id.* at 10:14–20.

In its motion for reconsideration, APC contends the court erred in finding the plugstrip is a fully integrated, one-piece device because, according to APC, the '543 patent does not disclose that limitation (f) of claim 1 - the current-related information reporting system limitation - is integrated

---

[4] In the fall of 1999, APC developed the MSVM, a vertical intelligent PDU with (1) an input cord, (2) a number of outlets, (3) a number of relays, (4) an LED display, and (5) a NIC component - housed in a separate enclosure and associated with the outlet component - to report current information over a network. *See* Doc. #287, Exhibit A, Claim Chart, 1–6; Doc. #288, Exhibit 4.

1   into the plugstrip housing. To support this argument, APC first contends that Figure 1 of the

2   '543 patent shows a proposed product design that uses RJ-11 control jacks.[5] APC argues that the

3   use of RJ-11 control jacks infers that the "current-related information reporting system" of

4   limitation (f) connects to the plugstrip through these jacks, and therefore, the reporting system must

5   be a component external to the plugstrip housing. However, APC's argument is inherently flawed.

6   The mere fact that the plugstrip has RJ-11 control jacks implies nothing about what type of device

7   connects to the plugstrip through those control jacks. RJ-11 control jacks are used by several

8   different types of products and the jacks identified in Figure 1 could be used to connect a multitude

9   of external devices to the plugstrip housing including external data receivers, modems, telephone

10  handsets, video security equipment, and industrial control and telemetry equipment. Further, while

11  the use of RJ-11 control jacks permits a user to connect an external "current-related information

12  reporting system," to the device, this product design does not suggest that the reporting system can

13  only be connected exclusively through the jacks. Nor does this configuration suggest that external

14  connection was the intention of the designers of the '543 patent. Moreover, Figure 1 does not show

15  or depict an external "current-related information reporting system," but in fact illustrates a fully

16  integrated plugstrip in which the reporting system is enclosed within the plugstrip housing. Thus,

17  the court finds that Figure 1 of the '543 patent does not disclose a two-piece device.

18      Second, APC argues that the '543 patent discloses that "preliminary implementations" of

19  STI's product designs connected the "current-related information reporting system" externally to

20  the plugstrip so that it was a separate component from the plugstrip housing similar to its own

21  MSVM product design. *See* Doc. #288, Exhibit 1, '543 patent, Col. 3:66–4:2. Further, APC argues

22  that the '543 patent specification suggests that the "current-related information reporting system" is

23  merely "preferably fully integrated within [the] power distribution plugstrip," but that it is not

24  solely limited to internal integration within the plugstrip. Therefore, APC concludes that the court

25  _____

26      [5] A RJ-11 control jack is a type of registered jack for telephonic communications, and is the standard
    phone connection jack used in the United States.

erred in holding that the '543 patent required the reporting system to be enclosed within the plugstrip housing. The court disagrees.

While a patent's disclosures may help in deciding the meaning of claim language, "particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988) (citing *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 867 (Fed. Cir. 1985)). This is especially true when "the alternative embodiment . . . would contradict the language of the claims." *TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1373 (Fed. Cir. 2008). Because the court has already found the plain language of the claim discloses a fully integrated plugstrip, it will not read contradictory examples of previous product designs into the claims.

Finally, APC argues the word "plugstrip" in the '543 patent's preamble is not a limitation on the patent claims, and thus, it was error for the court to use the preamble language of "plugstrip" to interpret the invention as a fully-integrated, one-piece device. *See* Doc. #385.

Notably, and in contrast to APC's motion for reconsideration, at no point in the court's order did the court rely on the preamble language to conclude the plugstrip was a fully integrated, one-piece device. Rather, the court looked only to the patent's title, summary, disclosures, and figures. *See* Doc. #381, 10:14–20. However, had the court concluded that the preamble language operated as a further limitation to claim 1 of the '543 patent, the court finds that, as addressed below, such a conclusion would have been appropriate and would have further supported the court's ultimate finding that the '543 patent discloses a fully integrated, one-piece device.

In general, preamble language does not limit the claims. *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1347 (Fed. Cir. 2012) (citing *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1346 (Fed. Cir. 2002)). However, the preamble may limit a claim if the preamble is "necessary to give life, meaning, and vitality" to the claim. *Poly-Am., L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1309–10 (Fed. Cir. 2004) (quoting *Pitney Bowers, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1306 (Fed. Cir. 1999)). Whether the preamble is a limitation

to a claim is a fact-specific inquiry and depends on the entire patent's context. *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002); *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1572–73 (Fed. Cir. 1996).

In this case, as previously mentioned, the patent as a whole is replete with references to the device as a singular plugstrip throughout the '543 patent's title, summary, and disclosures. These references indicate that the preamble is indeed necessary to give "life, meaning, and vitality" to the claim. *See Poly-Am.*, 383 F.3d at 1310. Further, the word "plugstrip" in the preamble forms an antecedent basis for limitation (f). Limitation (f) states that the current-related information reporting system must be "connectable . . . with a separate communications network distal from the electrical power distribution plugstrip." Doc. #288, Exhibit 1, '543 patent, Col. 11:12–19. "When limitations in the body of the claim rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention." *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1339 (Fed. Cir. 2003). Because limitation (f) uses the term "plugstrip" from the preamble, the preamble is necessary to give "life, meaning, and vitality" to claim 1. Thus, the preamble does in fact limit claim 1 and further supports the court's order that the plugstrip of the '543 patent discloses a fully integrated, one-piece device.

Alternatively, APC argues that even if the preamble limits the claims, the word "plugstrip" does not suggest a one-piece, fully integrated device. Relying on claim 3 of the '543 patent, APC notes that the claim language specifically requires an external power manager application. Doc. #288, Exhibit 1, '543 patent, Col. 11:25-31 ("The electrical power plugstrip of claim 2 further comprising an external power manager application external to the vertical strip enclosure . . ."). Because the plugstrip has a required external component, APC contends the preamble term "plugstrip" cannot accurately be interpreted as a one-piece device.

However, the court finds it significant that the '543 patent explicitly describes this "external power manager application" as external to the plugstrip. The reporting system, in contrast, lacks this express description. *See* Doc. #288, Exhibit 1, '543 patent, Col. 10:57-11:19. Given the

context of claim 1 along with the rest of the patent, it was reasonable for the court to interpret the limitation components of claim 1 as integrated within the plugstrip housing. Similarly, the fact that a device works in conjunction with some external component does not make the device any less integrated. For example, a laptop computer is still considered a fully-integrated, one-piece laptop when it is connected to an external mouse; the mouse does not diminish the computer's integrated, one-piece nature. In this case, though there may be external components that can attach to the plugstrip, and the plugstrip can still accurately be called a plugstrip when attached to these components, the fact that components may be externally attached says nothing about whether the plugstrip must still contain the "current-related information reporting system" within the plugstrip housing. Therefore, the possibility that external components made be connected to the plugstrip does not weigh against the court's finding that the term "plugstrip" as used in the '543 patent refers to a fully integrated, one-piece device. Accordingly, the court finds that it did not err in concluding that the '543 patent was not anticipated by APC's MSVM product design.

**B. The Term "Comprising"**

As stated in the court's prior order on summary judgment, "[c]laim 1 discloses '[a]n electrical power distribution plugstrip . . . comprising in combination . . . (F) a current-related information reporting system associated with said vertical strip enclosure . . ." Doc. #381 at 10:1-3. From this disclosure, the court presumed the word "comprising" to mean "includ[ing] as a part of." *Id*. at 10:3–4 (citing *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1348 (Fed. Cir. 2001)). Given the context of the '543 patent, the court held that the use of the word "comprising" requires all the limitations of claim 1, including the current reporting information system, to be contained within the plugstrip housing. *Id.* at 10:6–8.

APC contends the court erroneously presumed the term "comprising" to mean "physically contained within," and instead, should have more broadly presumed the term "comprising" to mean the product design simply includes the listed limitations, but does not mandate a location for the listed limitations. Specifically, APC argues that based on prior case law, the term "comprising"

does not "necessarily convey[] information about the location or position" of any components of the '543 patent. *See Intergraph Corp. v. Intel Corp.*, 89 F. App'x 218, 229 (Fed. Cir. 2004).

The court has reviewed the documents and pleadings on file in this matter and disagrees with APC's contention that the term "comprising" should be read broadly within the context of the '543 patent. Based on the language of the '543 patent, a narrower meaning of "comprising" is appropriate as the patent suggests a narrower  meaning. *See, e.g.*, *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 834–35 (Fed. Cir. 2003). For example, in *Storage Tech*, the court found that two similar processors must be contained within a forwarding device, despite using the term "comprising" in the claim language, because the court found the forwarding device to be a single unit. *Id.* In this case, because the court found the plugstrip to be a single device, it appropriately concluded the term "comprising" to require all components to be contained within the plugstrip. Though the term does not necessarily convey information about the claim limitation's physical location, the term is not precluded from conveying such information within the context of the entire patent. Therefore, the court finds that it did not err in construing the term "comprising" to mean that the limitations of claim 1, including the "current-related information reporting system," must be physically contained within the plugstrip housing.

**IV.    Conclusion**

In conclusion, the court finds that it did not err in its prior ruling that the plugstrip defined in the '543 patent is a one-piece design. Consequently, all limitations of claim 1 must necessarily be contained within the plugstrip. Because APC's MSVM contains an external reporting system, it does not meet the '543 patent's claim 1 limitation (f). Therefore, the court correctly found that the '543 patent is not anticipated by APC's MSVM product design. Accordingly, the court shall deny APC's motion for reconsideration.

//

//

//

1      IT IS THEREFORE ORDERED that defendant's motion for reconsideration (Doc. #385) is

2  DENIED.

4      IT IS SO ORDERED.

5      DATED this 22nd day of July, 2013.

6                               _____

7                               LARRY R. HICKS
UNITED STATES DISTRICT JUDGE