UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | | |
|---|---|---|
| SERVER TECHNOLOGY, INC., | ) | |
| Plaintiff and Counterdefendant, | ) | 3:06-CV-00698-LRH-VPC |
| v. | ) | |
| | ) | ORDER |
| AMERICAN POWER CONVERSION CORPORATION, | ) | |
| Defendant and Counterclaimant. | ) | |

Before the court is plaintiff Server Technology, Inc.'s ("STI") renewed motion for summary judgment on defendant American Power Conversion Corp.'s ("APC") fifth counterclaim for False Marking under 35 U.S.C. §292. Doc. #406.[1] APC filed an opposition (Doc. #411) to which STI replied (Doc. #412).

**I.     Facts and Procedural History**[2]

Plaintiff STI manufactures intelligent power distribution devices. Defendant APC also manufacturers intelligent power distribution devices. Both STI and APC are direct competitors in the rack-mounted power distribution market.

In December 2006, STI brought the underlying patent infringement action against APC

---

[1] Refers to the court's docket number.

[2] This action has an extensive factual and procedural history. For a complete review of this action's history, see the court's claim construction order (Doc. #163).

alleging that ACP's rack-mounted power distribution products infringed several of its patents. In response, APC counterclaimed that STI falsely marked certain product literature like datasheets and manuals as being covered by one of its intelligent power distribution patents, United States Patent number 7,043,543 ("the '543 patent"), when in fact the product was not covered by the patent's claims. Thereafter, STI filed the present renewed motion for summary judgment on APC's fifth counterclaim for false marking. Doc. #406.

**II.     Legal Standard**

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Where reasonable minds could differ on the material facts at issue, summary

judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute; there must be evidence on which a jury could reasonably find for the party. *See id.* at 252.

## III. Discussion

The False Marking statute, 35 U.S.C. §292, as amended by the Leahy-Smith America Invents Act ("AIA") in September 2011, provides in relevant part that:

> "(a) Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word 'patent' of any word or number importing that the same is patented, for the purpose of deceiving the public . . . [s]hall be fined not more than $500 for every such offense.
> (b) A person who has suffered a competitive injury as a result of a violation of this section may file a civil action in a district court of the United States for recovery of damages adequate to compensate for the injury."

To establish a claim for false patent marking under the amended statute, APC must establish that: (1) STI marked an unpatented article with a patent marking; (2) with the intent to deceive the public; and (3) APC suffered a competitive injury as a result of the false marking. *U.S. Rubber Recycling, Inc. V. ECORE International, et al.*, 2011 U.S. Dist. LEXIS 154151, *10 (C.D. Cal. 2011). A competitive injury under §292 requires an actual, tangible economic injury. *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1373 (Fed. Cir. 2013); *see also U.S. Rubber Recycling, Inc.*, 2011 U.S. Dist. LEXIS 154151, *14 (holding that to properly allege a competitive injury the alleging party must establish that the false marking caused a loss of sales).

In its counterclaim, APC alleges two different claims in support of its false marking counterclaim. First, APC contends that STI relied on an aggressive marketing strategy that placed significant emphasis on its patent portfolio in promoting its rack-mount PDU products to customers. This strategy included general references to STI's patent portfolio in marketing and promotional materials. APC alleges that this conduct created the impression with consumers that STI had exclusive patent rights in all types of rack-mount PDUs when in fact STI's patents were

3

far more limited. Further, APC alleges that this aggressive marketing strategy caused STI to experience significant revenue growth and market expansion which allegedly cut into APC's share of the market, and ultimately, its profits.

The court has reviewed APC's first claim and finds that there is no legal support for APC's proposition that the false marking statute applies to general references of a company's patent portfolio in marketing and promotional materials as part of an overall marketing strategy. Rather, Section 292 applies only in connection with the direct marketing and sale of an unpatented article or product. *See Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005). Therefore, APC's first theory fails to state a claim for relief.

APC's second claim for false marking is based on STI's product datasheets and manuals which were directly marked that the products were covered by STI's '543 patent. In its motion for summary judgment, STI readily concedes that its product datasheets were falsely marked with the '543 patent for a period of four (4) years from 2006 through 2010. However, STI argues that APC has not sufficiently established any "competitive injury" as a result of STI's false marking and therefore, summary judgment is appropriate in this action. *See* Doc. #406. The court agrees.

To survive summary judgment APC "must produce sufficient evidence so that a reasonable jury could conclude that, during the relevant period, there were consumers who would have purchased [APC's] products *but for* [STI's] false marking." *U.S. Rubber Recycling, Inc.*, 2011 U.S. Dist. LEXIS 154151, *12 (emphasis added). In its counterclaim, APC alleges only two instances of lost sales which it attributes to STI's false marking of its product datasheets: a sale to non-party NetApp and a sale to non-party Dell, both computer data center companies. However, the record before the court establishes that APC did not lose either the NetApp or Dell sales *because of* STI's false marking of its products.

First, David Brown ("Brown"), the NetApp employee who made the ultimate purchasing decision for NetApp, testified in his deposition that STI's patents played no role whatsoever in his decision to purchase STI's products. Doc. #407, Exhibit 11, Brown Depo., p.66:6-9 ("Q. So you

4

would not have been driven to give this business to STI over BayTech or APC because of any concerns about patents, would you? A. No, sir."); p.72:10-19 ("Q. All right. Do you recall whether there was any discussion whatsoever of STI's patents during that time frame? A. No, I don't think that - again, there was no patent concerns on my part. Q. Did the existence of STI's patents play any role whatsoever in your decision to purchase the PDUs from STI for the build out of the first floor? A. No."). Moreover, in contrast to APC's position that its products were under consideration, Brown testified that APC's product was too wide to fit on NetApp data center racks and that APC was not responsive to NetApp's needs. *See Id.* at p.58:3-22; p.71:13-15; p.86:2-19.

Second, as to the alleged lost sale to customer Dell, it is undisputed that Dell ultimately chose non-party BayTech to support its power distribution needs over both APC and STI. Thus, it is undisputed that APC did not lose the Dell sale to STI because of STI's false marking. Finally, neither Pat Johnson ("Johnson") nor Joe Kramer ("Kramer"), employees of APC, could indicate in their depositions any sales actually lost by APC as a result of STI's falsely marked products. Doc. #407, Exhibit 3, Kramer Depo., p22:18-21; Exhibit 4, Johnson Depo., p.14:19-24. Therefore, the court finds that there is no evidence before the court supporting APC's claim that STI's false marking of its products caused APC any "competitive injury." Accordingly, the court shall grant STI's motion for summary judgment on this issue.

IT IS THEREFORE ORDERED that plaintiff's renewed motion for summary judgment (Doc. #406) is GRANTED. The clerk of court shall enter judgment in favor of plaintiff Server Technology, Inc. and against defendant American Power Conversion Corp. on defendant's fifth counterclaim for False Marking under 35 U.S.C. §292.

///

///

///

///

///

IT IS FURTHER ORDERED that the parties shall have thirty (30) days after entry of this order to prepare a proposed joint pretrial order and submit the same for signature.

IT IS SO ORDERED.

DATED this 22nd day of August, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE