William E. Peterson (Nevada SBN 1528)
SNELL & WILMER
50 W. Liberty Street, Suite 510
Reno, Nevada 89501
Telephone: (775) 785-5440
Fax: (775) 785-5441
wpeterson@swlaw.com

Terrence J. Truax (admitted *Pro Hac Vice*)
Reginald J. Hill (admitted *Pro Hac Vice*)
Michael G. Babbitt (admitted *Pro Hac Vice*)
JENNER & BLOCK LLP
353 North Clark
Chicago, Illinois 60654
Telephone: (312) 222-9350
Facsimile: (312) 527-0484
ttruax@jenner.com
rhill@jenner.com
mbabbitt@jenner.com

Attorneys for American Power Conversion
Corporation, Inc. (a Massachusetts corporation)

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| SERVER TECHNOLOGY, INC. (a Nevada corporation),<br><br>    Plaintiff and Counterdefendant,<br><br>    vs.<br><br>AMERICAN POWER CONVERSION CORPORATION (a Massachusetts corporation),<br><br>    Defendant and Counterplaintiff. | Case No.: 3:06-CV-698-LRH-VPC<br><br>**TRIAL BRIEF OF DEFENDANT AND COUNTER-PLAINTIFF APC** |

## I.   INTRODUCTION

In this action, Plaintiff/Counter-Defendant Server Technology, Inc. (hereinafter "STI") claims that Defendant and Counter-Plaintiff American Power Conversion Corporation's (hereinafter "APC") sales of switched PDU products (the "Accused Products") infringe claim 15 of U.S. Patent No. 7,043,543 ("the '543 Patent") and claim 15 of U.S. Patent No. 7,702,771 ("the '771 Patent," together with the '543 patent, the "patents-in-suit")). As will be shown below and at trial, STI will be unable to prove by a preponderance of the evidence that APC's products infringe the patents-in-suit. APC will also demonstrate by clear and convincing evidence at trial that the patents-in-suit are invalid and unenforceable.

## II.   ISSUES TO BE DETERMINED AT TRIAL

The Court has bifurcated trial in this case into two phases: a jury trial, for determining issues related to infringement, validity, and, if applicable, damages, and a bench trial, for determining issues related to APC's claim that the patents-in-suit are unenforceable due to inequitable conduct.

The issues to be determined during the jury trial are:

1. Is claim 15 of the '543 Patent invalid under 35 U.S.C. §§ 102 or 103?
2. Is claim 15 of the '771 Patent invalid under 35 U.S.C. §§ 102 or 103?
3. Do the Accused Products infringe the '543 Patent or the '771 Patent?
4. If the claims are both valid and infringed, to what amount of damages, if any, STI is entitled?

The issue to be determined during the bench trial is:

1. Are the patents-in-suit unenforceable due to inequitable conduct?
2. If the patents-in-suit are unenforceable, is the case "exceptional" under 35 U.S.C. § 285, such that APC would be entitled attorneys' fees?

In addition, APC expects that the Court will be asked to resolve a host of evidentiary issues related to questions of hearsay, relevance, prejudice, and other related matters. Trial is scheduled to begin on May 12, 2014, and is expected to last for approximately two weeks.

III. NON-INFRINGEMENT OF THE PATENTS-IN-SUIT

STI will not be able to demonstrate that the accused products satisfy every limitation of the patents-in-suit.  For example, the AP7900 products do not measure, report, or communicate "power information," as that term has been construed by the Court.  STI will not be able to argue that the AP7900 products literally satisfy the "power information" limitation because the parties have already agreed that power is the multiplicative product of current and voltage. It cannot be an "on/off" state.  Nor will STI be permitted to argue that "power" and "current" are the same under the doctrine of equivalents.  That argument would allow STI to equate "power" and "current," and would undermine the Court's claim construction by impermissibly vitiating the claim language. *Warner Jenkinson Co., Inc. v. Hilton-Davis Chemical Co.*, 520 U.S. 17, 39 n.8 (1997) (where "theory of equivalence would entirely vitiate a particular claim element, partial or complete judgment should be rendered by the court, as there would be no further material issue for the jury to resolve").  The Court has already concluded power and current are "distinct concepts," (Dkt. 163 at 25), and further ruled that "[p]ermitting current information to satisfy the power information limitation . . . would eliminate the distinction suggested by the plain language of the claims, (Dkt. 381 at 26). STI's argument under the doctrine of equivalents would erase that important distinction, and must not be permitted at trial. *See Scientific Specialties, Inc. v. Thermo Fisher Scientific, Inc.*, 684 F. Supp. 2d 1187, 1196 (N.D. Cal. 2010) (patentee "barred from regaining this excluded structure through the doctrine of equivalents" in light of court's construction); *Intex Recreation Corp. v. Metalast S.A. Sociedad Unipersonal*, 400 F. Supp. 2d 123, 134 (D.D.C. 2005) (rejecting equivalents argument that was "expressly precluded by the claim construction").  For those reasons, and others, STI will not be able to demonstrate that the AP7900 line of APC products meet each and every limitation of claim 15 of the '543 patent, literally or under the doctrine of equivalents.

In addition, STI will not be able to demonstrate that any of the accused products meet the claim limitation of the patents-in-suit that requires a digital display in "another area." Both the AP7900 and AP8900 line of products contain displays in the same areas as the outlets.

APC will also elicit testimony regarding STI's knowledge of prior art devices when it sought patent protection for the claimed invention. Such testimony will be relevant to explaining any alleged utility and/or advantages of the claimed invention over older models in the marketplace, such as the PA-800, MSVM, and BayTech products.

## IV. INVALIDITY OF THE PATENTS-IN-SUIT

The patents-in-suit combine old, already-known elements, yielding predictable results. Therefore, the patents-in-suit are invalid for obviousness. The Supreme Court has made clear that "progress beginning from higher levels of achievement is expected in the normal course, [and] the results of ordinary innovation are not the subject of exclusive rights under the patent laws." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007). "When a work is available in one field of endeavor, design incentives and other market forces can prompt variations of it, either in the same field or a different one. If a person of ordinary skill can implement a predictable variation, § 103 [obviousness] likely bars its patentability. For the same reason, if a technique has been used to improve one device, and a person of ordinary skill in same way, using the technique is obvious unless its actual application is beyond his or her skill. *Id*. at 1740.

The Supreme Court has also made clear that "[g]ranting patent protection to advances that would occur in the ordinary course without real innovation retards progress and may, in the case of patents combining previously known elements, deprive prior inventions of their value or utility." *Id*. at 1741. "Common sense teaches, however, that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle. . . . A person of ordinary skill is also a person of ordinary creativity, not an automaton." *Id*. at 1742. Therefore, the

combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results. *Id*. at 1739. "A patent for a combination which only unites old elements with no change in their respective functions obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men." *Great A. & P. Tea Co. v. Supermarket Corp.*, 340 U.S. 147, 155 (1950); *see Sakraida v. Ag Pro, Inc.*, 425 U.S. 273 (1976).

STI's principle claim to innovation in this case is its use of a particular kind of display — a digital display — as opposed to other kinds of displays such as an LED display. Such a modest modification of STI's competitors' products is not an innovation worthy of patent protection. At trial, APC will prove that the use of several types of displays was well known in the art to address the known problem of current overloads in electrical devices. Selecting an LED or digital display to address the overload problem was nothing more than an obvious design choice. STI's argument that only its engineers realized the incremental benefit of a digital display — the crux of its case — is immaterial as a matter of law. *KSR Intern Co.*, 550 U.S. at 421 (Federal Circuit erred "by holding that courts and patent examiners should look only to the problem the patentee was trying to solve . . . [u]nder the correct analysis, any need or problem known in the field and addressed by the patent can provide a reason for combining the elements in the manner claimed"). The many PDU designers who thought to include a digital display in their PDUs before STI, including the inventors of the Lee and Liu patents, clearly understood it as an obvious design choice. In addition, STI inventors and engineers were well aware of products like the MasterSwitch VM, the RPC-21, and the RPC-7 when the patents-in-suit were being prosecuted before the PTO. Because this information was not disclosed and not before the Patent Office during the prosecution of the '543 Patent, the Patent Office did not have the benefit of the best, closest, and most relevant prior art when it rendered its decision(s) on the patentability of the claimed invention. In light of the prior art that came before them, STI's

patents are obvious and invalid under 35 U.S.C. §§ 102 and 103. As for other limitations in STI's patents, these were squarely met by various items of prior art that will be presented at trial.

The patents-in-suit are also invalid because they are obvious variants and derivations of inventions that STI's competitors, including APC, conceived, developed, and brought to market long before the date of conception for the claimed invention. APC will present clear and convincing evidence at trial demonstrating that STI was monitoring and reverse-engineering competitor products, and then pursued patent protection for an invention it knew was an obvious variant of those competitor products. To show information is derivation prior art under § 102(f), a defendant must establish (1) "prior conception of the invention by another" and (2) "communication of that conception" to the patentee. *Delta Frangible Ammunition, LLC v. Sinterfire, Inc.*, 663 F. Supp. 2d 405, 418 (W.D. Pa. 2009) (quoting *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1344 (Fed. Cir. 2003)); *Pure Fishing, Inc. v. Normark Corp.*, No. 3:10–cv–2140–CMC, 2012 WL 6138216, at *15-17 (D.S.C. Dec. 11, 2012) (granting summary judgment of invalidity based on derivation under §102(f)). Evidence showing that the patentee knew of relevant features in the prior art is therefore a critical element of proof for a derivation invalidity argument under § 102(f).

The patents-in-suit are also invalid because they name an inventor who did not invent or contribute to the claimed invention. A patent is invalid if an inventor listed on the patent did not invent the claimed invention but instead learned of the claimed invention from someone else. APC will demonstrate at trial that Dennis W. McGlumphy a named inventor on the face of the patent, did not join STI until June 2000 – almost one year after STI claims to have conceived of the invention disclosed in the patents-in-suit. For that reason, the patents-in-suit are invalid.

V. **UNENFORCEABILITY OF THE PATENTS-IN-SUIT**

STI's patents are also unenforceable. STI's lead inventor and CEO, Carrel Ewing, by and through his attorneys, deliberately misrepresented the state of the prior art in each of his patents by

falsely claiming that STI innovated the idea of a vertical PDU. During prosecution of his early patents, Ewing took steps to withhold from the Patent Office Examiner all information about the vertical products of STI's competitors APC and BayTech. During the prosecution of the '543 patent, STI never disclosed any information about the Masterswitch VM, RPC-7, or RPC-21 products, even though it was the closest prior art to STI's claims. STI undeniably knew about the prior art and should have disclosed it to the Patent Office. Despite a number of opportunities to be candid about his competitors' products, Ewing failed to do so. During prosecution of the later '771 Patent, STI's prosecuting attorney continued this deception by misleading the Examiner regarding the relevance of this same prior art. STI's prosecuting attorney also refused to provide additional, requested information to the Patent Office that would have been highly material to the prosecution of the '771 Patent. In addition, it has become clear due to newly-produced evidence that STI's prosecuting attorney made deliberate attempts to obfuscate or otherwise confuse the issues of priority and inventorship.

For all of those reasons, the patents-in-suit are unenforceable due to inequitable conduct.

## VI. DAMAGES

For the reasons stated above and others, STI is not entitled to damages or any other relief from APC, and APC is entitled to the relief requested in its counterclaims. To the extent any damages are appropriate, APC will demonstrate that under the facts of this case, they should be severely limited under the applicable law. *See* 35 U.S.C. § 284; *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1121 (S.D.N.Y. 1970), *mod. and aff'd*, 446 F.2d 295 (2d Cir.), *cert. denied*, 404 U.S. 870 (1971); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156, 197 U.S.P.Q. 726 (6th Cir. 1978)

In addition, due to STI's inequitable conduct before the Patent Office, this is an exceptional case under 35 U.S.C. § 285, and APC is entitled its attorneys' fees.

## VII. CONCLUSION

For the foregoing reasons, APC will ask the judge and jury to find it its favor at trial.

DATED: May 5, 2014                               Respectfully Submitted,

                                                                   /s/ *Terrence J. Truax*
William E. Peterson (Nevada SBN 1528)
SNELL & WILMER
50 W. Liberty Street, Suite 510
Reno, Nevada 89501
Telephone: (775) 785-5440
Fax: (775) 785-5441
wpeterson@swlaw.com

Terrence J. Truax
Reginald J. Hill
Michael G. Babbitt
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, Illinois 60654
Telephone: (312) 923-2738
Fax: (312) 840-7738
ttruax@jenner.com
rhill@jenner.com
mbabbitt@jenner.com

Attorneys for Defendant and Counterclaimant
American Power Conversion Corporation

# **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing **TRIAL BRIEF** was filed on May 5, 2014 with the Clerk of the Court by using the CM/ECF system which will send a notice of filing to the following:

| | |
|---|---|
| James E. Hartley<br>Conor Farley<br>Holland & Hart LLP<br>555 Seventeenth Street, Suite 3200<br>Denver, CO 80202-3979<br>Telephone: (303) 295-8237<br>Fax: (303) 975-5486<br>jhartley@hollandhart.com<br>cfarley@hollandhart.com | William E. Peterson (Nevada SBN 1528)<br>SNELL & WILMER<br>6100 Neil Rd., Suite 555<br>Reno, Nevada 89511<br>Telephone: (775) 829-6000<br>Fax: (775) 829-6001<br>wpeterson@swlaw.com |

Shane P. Coleman
Holland & Hart LLP
401 North 31st Street
Suite 1500
Billings, MT 59101
Telephone: (406) 252-2166
Fax: (406) 252-1669
spcoleman@hollandhart.com

                                        /s/ Michael G. Babbitt