UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SERVER TECHNOLOGY, INC., ) | |
| ) | |
| Plaintiff and Counterdefendant, ) | 3:06-CV-00698-LRH-VPC |
| ) | |
| v. ) | |
| ) | ORDER |
| AMERICAN POWER CONVERSION ) | |
| CORPORATION, ) | |
| ) | |
| Defendant and Counterclaimant. ) | |
| ) | |

Before the court is defendant American Power Conversion Corp.'s ("APC") motion for summary judgment. Doc. #545.[1] Plaintiff Server Technology, Inc. ("STI") filed an opposition to the motion (Doc. #548) and a supplemental opposition to the motion (Doc. #556). In response, APC filed a reply. Doc. #559.

**I.   Facts and Procedural History**[2]

Plaintiff STI manufactures intelligent power distribution devices. Like STI, defendant APC manufacturers intelligent power distribution devices. Both STI and APC are direct competitors in the rack-mounted power distribution market.

---

[1] Refers to the court's docket number.

[2] This action has an extensive factual and procedural history. For a complete review of this action's history, see the court's claim construction order (Doc. #163) and the court's orders on summary judgment (Doc. ##380, 381, 423).

In December 2006, STI brought the underlying patent infringement action alleging that APC's rack-mounted power distribution products - the AP7900 and AP8900 series of products - infringe two of STI's patents: United States Patent numbers 7,043,543 ("the '543 patent"), and 7,702,771 ("the '771 patent). Doc. #1. APC denied that its products infringe STI's patents and counterclaimed that STI's patents are invalid as a matter of law.

In April 2014, STI, in an attempt to reduce the issues for trial, offered APC a covenant not to sue on Claim 1 of the '543 patent. Thereafter, APC filed the present motion for summary judgment arguing that, as a result of STI's covenant not to sue, the court has been divested of subject matter jurisdiction over STI's remaining patent infringement claims concerning Claim 15 of the '543 patent and Claim 15 of the '771 patent. Doc. #545.

**II.     Legal Standard**

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).
///

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute; there must be evidence on which a jury could reasonably find for the party. *See id.* at 252.

### III. Discussion

It is well settled that a covenant not to sue for patent infringement can divest the court of subject matter jurisdiction over any and all claims that relate to that covenant, "because the covenant eliminates any case or controversy between the parties." *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1346 (Fed. Cir. 2010). The determination of "whether a covenant not to sue will divest the trial court of jurisdiction depends on what is covered by the covenant." *Tech. Licensing Corp. v. Technicolor USA, Inc.*, 800 F. Supp. 2d 1116, 1121 (E.D. Cal. 2011) (citing *Dow Jones*, 606 F.3d at 1346-47).

In its motion, APC argues that STI's covenant not to sue encompasses STI's remaining infringement claims and thus, the court has been divested of jurisdiction over those infringement claims. *See* Doc. #545. Specifically, APC argues the covenant not to sue on Claim 1 applies to all other claims in the '543 patent as well as all claims in the '771 continuation patent, and in particular, Claim 15 of both patents, because those claims relate to the same subject matter covered by Claim 1 of the '543 patent. *See General Protecht Group, Inc. v. Leviton Manufacturing Co., Inc.*, 651 F.3d 1355, 1361-62 (Fed. Cir. 2011). However, in this action, STI offered APC two separate covenants not to sue. Thus, before the court can determine the scope of the covenant, the

court must first determine which covenant is the operative covenant in this action.

On April 22, 2014, as part of its effort to reduce the issues for trial, STI offered APC an initial covenant not to sue on Claim 1 of the '543 patent. That covenant read in its entirety:

> "STI, on behalf of itself and any successors-in-interest to the '543 patent, hereby releases and unconditionally covenants not to sue APC, or any of its subsidiaries, affiliates, divisions, employees, licensees, distributors, resellers or customers, for infringement of claim 1 of the '543 patent (including direct infringement, contributory infringement, and/or inducing infringement), based on APC's manufacture, importation, use, sale, and/or offer for sale of any products, that exist as of the date of this letter, or that have existed at any time in the past."

Doc. #545, Exhibit 6. Subsequently, on May 2, 2014, and in response to concerns raised by APC, STI offered APC a second covenant not to sue. That covenant read in its entirety:

> "STI, on behalf of itself and any successors-in-interest to the '543 patent, hereby releases and unconditionally covenants not to sue APC, or any of its subsidiaries, affiliates, divisions, employees, licensees, distributors, resellers or customers, for infringement of claim 1 of the '543 patent (including direct infringement, contributory infringement, and/or inducing infringement), based on APC's manufacture, importation, use, sale and/or offer for sale of any past, present or future product, that exists as of the date of this letter [May 2, 2014], that has existed at any time in the past, or that APC will introduce in the future.
>
> This covenant shall apply not only to claim 1 of the '543 patent as set forth in the preceding sentence, but also to any claim that is identical in scope to claim 1 of the '543 patent that has issued or may in the future issue from any application that is a continuation, continuation-in-part, or divisional from the application for the '543 patent.
>
> For purposes of clarity, neither claim 15 of the '543 patent nor claim 15 of United States Patent No. 7,702,771 shall be considered 'identical in scope' to claim 1 of the '543 patent."

Doc. #545, Exhibit 8.

In its motion for summary judgment, APC argues that the April 22nd covenant is the operative covenant for the court's consideration because it was "unconditional" and did not require any action by APC. *See* Doc. #545. The court disagrees.

The court has reviewed the documents and pleadings on file in this matter and finds that the May 2nd covenant is the operative covenant in this action. First, STI received no consideration for the April 22nd covenant. In fact, STI received no benefit in offering this first covenant because, as APC pointed out in its April 27, 2014 response, "the validity of claim 1 of the '543 patent remains

4

very much in this case" despite the covenant. Doc. #545, Exhibit 7. APC's interpretation of the covenant at the time it was offered, and in contrast to its position in the present motion for summary judgment, was that "[t]he scope of STI's partial covenant set forth in the April 22 letter is too unclear to divest the Court of jurisdiction." *Id*. Thus, as the validity of claim 1 was still before the court, STI received no benefit from its offer of the covenant not to sue.

Second, and more importantly, the April 22nd covenant was rejected by APC. Throughout its response to the covenant, APC repeatedly stated that the covenant failed to protect its interests or offered it sufficient protection, particularly in regard to future APC products. *See Id*. ("[T]he partial covenant is silent as to planned future activities and other reasonably foreseeable APC products."); ("[T]he covenant is silent as to continuations."). Based on these failures APC rejected the April 22nd covenant and requested STI provide a full covenant not to sue that fixed these identified deficiencies. *Id*. ("[U]nless STI is prepared to provide APC with a full covenant not to sue, the Court continues to have jurisdiction over APC's counterclaim that claim 1 of the '543 patent is invalid."). In order to address APC's concerns that the covenant did not sufficiently protect APC's rights and interests, and offer APC all of the protections against future products, STI offered the May 2nd covenant. This covenant was accepted by APC and contained adequate consideration in that validity of Claim 1 was no longer an issue in this action. Based on this history, the court finds that the May 2nd covenant not to sue is the operative covenant in this action.

Now that the court has determined the operative covenant, the court must determine the scope of the May 2nd covenant to see if it encompasses STI's remaining infringement claims arising from Claim 15 of both the '543 and '771 patents. The court finds that it does not. The scope of the May 2nd covenant does not encompass or cover Claim 15 of either the '543 or '771 patents because the covenant specifically excludes these claims as being within the scope of the covenant. *See* Doc. #545, Exhibit 8 ("For purposes of clarity, neither claim 15 of the '543 patent nor claim 15 of United States Patent No. 7,702,771 shall be considered 'identical in scope' to claim 1 of the

5

'543 patent."). The only reasonable conclusion from this express language is that STI did not grant a covenant with respect to Claim 15 of the '543 and '771 patents. Therefore, the court finds that the May 2nd covenant not to sue does not divest the court of jurisdiction over the remaining patent infringement claims. *See e.g., Lear Auto. Dearborn, Inc. v. Johnson Controls, Inc.*, 528 F. Supp. 2d 654, 672 (E.D. Mich. 2007) (holding that a covenant not to sue encompassing less than all of a patent's claims does not divest the court of jurisdiction over claims not covered by the covenant); *see also, Pfizer Inc. v. Teva Pharms. USA, Inc.*, 803 F. Supp. 2d 459, 463 (E.D. Va. 2011). Accordingly, the court shall deny APC's motion for summary judgment.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment (Doc. #545) is DENIED.

IT IS SO ORDERED.

DATED this 18th day of June, 2014.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE