Matthew B. Hippler (Nevada SBN 7015)
HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Telephone: 775-327-3000
Fax: 877-665-5867
mhippler@hollandhart.com

James E. Hartley
Conor F. Farley
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, Colorado 80202
Telephone: 303-295-8000
Fax: 303-295-8261
jhartley@hollandhart.com
cfarley@hollandhart.com

Donald A. Degnan
Timothy P. Getzoff
HOLLAND & HART LLP
1800 Broadway, Suite 300
Boulder, Colorado 80302
Telephone: 303-473-2700
Fax: 303-473-2720
ddegnan@hollandhart.com
tgetzoff@hollandhart.com
Attorneys for Plaintiff Server Technology, Inc.

Shane P. Coleman
HOLLAND & HART LLP
401 North 31st Street, Suite 1500
Billings, Montana 59101
Telephone: 406-252-2166
Fax: 406-252-1669
spcoleman@hollandhart.com

Michael R. Henson
PERKINS & COIE LLP
1900 Sixteenth Street, Ste. 1400
Denver, Colorado 80202
Telephone: 303-291-2337
Fax: 303-291-2437
mhenson@perkinscoie.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| SERVER TECHNOLOGY, INC., a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN POWER CONVERSION CORPORATION, a Massachusetts corporation,<br><br>Defendant. | Case No. 3:06-CV-00698-LRH-VPC<br><br>**STI'S MOTION FOR SUPPLEMENTAL DAMAGES AND PREJUDGMENT INTEREST** |

**MOTION FOR SUPPLEMENTAL DAMAGES AND PREJUDGMENT INTEREST**

Plaintiff Server Technology, Inc. respectfully moves for the entry of an order awarding supplemental damages and pre-judgment interest. Damages should be supplemented to account for APC's infringing sales after December 31, 2013, which were not considered by the jury. Additionally, STI is entitled to recover prejudgment interest on both the damages awarded by the jury, and the supplemental damages sought in this motion. The prime rate in effect at the time of the infringing sale is a reasonable rate for calculating prejudgment interest, and interest should be compounded annually.

This motion is supported by the following memorandum of points and authorities, and all the pleadings, papers and evidence properly before the Court.

**MEMORANDUM OF POINTS AND AUTHORITIES**

STI respectfully submits the following memorandum of points and authorities in support of its motion for supplemental damages and prejudgment interest.

**I.  STI IS ENTITLED TO RECOVER SUPPLEMENTAL DAMAGES ON APC'S INFRINGING SALES THROUGH THE DATE OF JUDGMENT.**

By verdict rendered May 29, 2014, the jury found that APC's vertical AP7900 and AP8900 series PDUs[1] infringed claim 15 of the '543 patent and claim 15 of the '771 patent. The jury awarded STI damages in the amount of $10,787,634, on APC's infringing sales. Verdict at 6 (Doc. #590). Judgment was entered on the verdict on August 8, 2014. (Doc. #614).

The amount of damages awarded by the jury reflects a 5% royalty on APC's sales of infringing products from December 18, 2006 through December 31, 2013. Prior to trial, APC produced records of infringing sales from December 18, 2006 (the date the lawsuit was filed) through December 31, 2013. APC did not produce records for sales after December 31, 2013.

---

[1] The infringing AP7900 PDU products include model nos. AP7930, AP7931, AP7932, AP7940, AP7941, AP7950, AP7951, AP7952, AP7953, AP7954, AP7960, AP7961, AP7968, AP7990, AP7991 and AP7998.
The infringing AP8900 PDU products include model nos. AP8941, AP8958, AP8958NA3, AP8959, AP8959NA3, AP8961, AP8965, and AP8981.

2

Therefore, the jury's verdict on damages was limited to infringing sales from December 18, 2006 through December 31, 2013.

There was no dispute at trial that APC's sales of infringing products during this time period amounted to $215,752,697.[2]  Jury Trial Tran. at 980, 981 (Doc. #597) (Napper), 2291 (Doc. #602) (Davis); PTX 432 at 3, 11.  Ms. Davis testified that 5% was a reasonable royalty rate.[3]  Jury Trial Tran. at 2278, 2291 (Doc. #602).  The jury accepted her testimony and awarded damages in the amount of $10,787,634, which is 5% of the total amount of infringing sales ($215,752,697).

To compensate STI fully for APC's infringement, the Court should award supplemental damages by applying the 5% reasonable royalty rate to infringing sales that were not considered by the jury.  After judgment entered on August 8, 2014, STI requested APC to account for infringing sales from January 1, 2014 through July 31, 2014.  The supplemental sales information has not yet been received.[4]  STI will supplement this motion as soon as APC provides the requested accounting.

### A. Supplemental Damages are Necessary for STI to be Compensated Adequately for APC's Infringement.

The Patent Act provides in pertinent part:

> Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.  ***When the damages are not found by a jury, the court shall assess them***.

---

[2] Brian Napper was the damages expert called by STI.  Julie Davis was APC's damages expert.

[3] Mr. Napper testified that a reasonable royalty rate was $40 per unit, which translated to a percentage royalty of just slightly more than 5%.  The amount of reasonable royalty damages calculated by Mr. Napper was $10,928,560. Jury Trial Tran. at 1036, 1044-45 (Doc. #597); PTX 432 at 33, 34.

[4] STI requested the updated sales information on August 11, 2014.  APC has indicated that it will work on collecting the sales information so that it can be produced "at an appropriate time." Email from Terry Truax to Jim Hartley (August 15, 2014).

35 U.S.C. § 284 (emphasis added). Thus, by virtue of the statutory language, the Court "shall" assess damages for any infringing sales that were not covered by the jury's damage award.

The Federal Circuit has confirmed that the patent holder is entitled to supplemental damage awards "for any infringement prior to [the entry of a permanent] injunction" that was not considered by the jury. *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1212-13 (Fed. Cir. 2010) (awarding damages for infringing sales for 17 months between entry of judgment and injunction at jury's royalty rate); *see also Metso Minerals, Inc. v. Powerscreen Int'l Distribution Ltd.*, 833 F. Supp. 2d 333, 347 (E.D.N.Y. 2011) (applying *Finjan* to award supplemental damages on pre-judgment infringing sales not considered by jury).

Indeed, "[c]ourts routinely grant motions for further accounting [i.e., supplemental damages] where the jury did not consider certain periods of infringing activity." *Itron, Inc. v. Benghiat*, 2003 WL 22037710, at *15-16 (D. Minn. Aug. 29, 2003) (internal quotations and citation omitted) (awarding damages for pre-verdict period of infringement for which infringer provided no sales data). *See also Hynix Semiconductor Inc. v. Rambus Inc.*, 609 F. Supp. 2d 951, 960-61 (N.D. Cal. 2009) (awarding supplemental damages for infringement occurring between verdict and entry of judgment, which could not have been considered by jury); *ActiveVideo Networks, Inc. v. Verizon Comms., Inc.*, 2011 WL 4899922, at *4 (E.D. Va. Oct. 14, 2011) ("supplemental damages may take into account pre-verdict infringing sales that were not covered by the jury verdict due to deficiencies in the discovery production").

Thus, supplemental damages are appropriate where the jury was unable to consider all infringing sales, and the damage award did not fully compensate the patentee as required by Section 284. *See also Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 2001 WL 34778689, at *22 (D. Nev. Aug. 2, 2001) (denying motion would allow infringer "to evade its obligation to pay damages for the remainder of the period of infringement and would contradict the patent law's purpose of compensating patent holders for the damage suffered due to infringement").

4

### B.  Supplemental Damages Should Be Awarded at the 5% Royalty Rate.

In calculating supplemental damages, courts typically apply the reasonable royalty rate found by the jury. *See, e.g., Hynix*, 609 F. Supp. 2d at 964-65; *Metso Minerals*, 833 F. Supp. 2d at 351-52; *Mondis Tech. Ltd. v. Chimei Innolux Corp.*, 822 F. Supp. 2d 639, 643 (E.D. Tex. 2011). Applying the jury's reasonable royalty rate has been described as "well within the ambit of reasonableness." *Mikohn*, 2001 WL 34778689, at *22-23.

In the present case, the jury awarded STI royalty-based damages at a royalty rate of 5%. STI respectfully submits that it is entitled to supplemental damages at the same 5% royalty rate applied to APC's infringing sales from January 1, 2014 through the date judgment is finally entered. As soon as APC accounts for infringing sales after December 31, 2013, STI will supplement this motion with the precise calculation of the amount of supplemental damages.

## II.  STI IS ENTITLED TO PREJUDGMENT INTEREST AT THE PRIME RATE.

### A.  Prejudgment Interest is "Ordinarily" Awarded.

The United States Supreme Court has held that "prejudgment interest should ordinarily be awarded" to a victorious patentee. *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655 (1983). "Prejudgment interest is ordinarily awarded from the date of the infringement to the date of judgment." *Junker v. HDC Corp.*, 2008 WL 3385819, at *6 (N.D. Cal. July 28, 2008).

In this case, as reflected in the declaration of Brian Napper filed with this motion, STI seeks prejudgment interest on the damages awarded by the jury in the amount of $1,397,437, which reflects interest at the prime rate, compounded annually, through the date of judgment (August 8, 2014). Additionally, STI is entitled both (1) to prejudgment interest on the supplemental damages described above, and (2) to prejudgment interest on all damages through the date of any amended judgment entered in this case.

### B.  Calculating Prejudgment Interest at the Prime Rate is Reasonable.

"District courts, in their discretion, have selected various rates, including the prime rate, the prime rate plus a percentage, the U.S. Treasury bill rate, the state statutory rate, corporate

5

bond rates, a set consumer credit rate, the rate the patentee actually paid for borrowed funds, and the rate the patentee actually earned on spare cash." *NTP Inc. v. Research in Motion, Ltd.*, 270 F. Supp. 2d 751, 763 (E.D. Va. 2003) (citing Donald S. Chisum, 7 CHISUM ON PATENTS § 20.03[4][a][v] (2002)); *see also id*. ("The prime rate, compounded quarterly, is a conservative, middle-of-the road approach that takes into account normal market fluctuations.").

In particular, the Federal Circuit has approved using the prime rate to calculate prejudgment interest. *See Lam v. Johns-Manville Corp.*, 718 F.2d 1056, 1066 (Fed. Cir. 1983) (no abuse of discretion in prejudgment interest rate at or above prime); *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991) (same).  The Northern District of California also has repeatedly held that "the prime rate is appropriate for a calculation of prejudgment interest in a patent case." *See, e.g.*, *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, 2008 WL 928535, at *3 (N.D. Cal. Apr. 4, 2008) (applying prime rate); *Nikko Materials USA, Inc. v. R.E. Serv. Co.*, 2006 U.S. Dist. LEXIS 3700 at *11-13 (N.D. Cal. Jan. 13, 2006) (applying prime rate and rejecting Treasury bill rate).  "[T]he prime rate was the most accurate estimate of the interest rate the patentee would have charged the infringer for a loan since it is the 'rate charged by banks to its most credit-worthy customers.'" *Id.* (quoting *Atmel Corp. v. Silicon Storage Tech., Inc.*, 202 F. Supp. 2d 1096, 1101 (N.D. Cal. June 21, 2002) (lending to a competitor at the prime rate "would have been more than generous")).

The Federal Circuit does not require a patentee to make any "affirmative demonstration, *i.e.*, proof of borrowing at or above prime . . . to be entitled to an award of prejudgment interest at the prime rate." *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1579-80 (Fed. Cir. 1988); *see also Uniroyal*, 939 F.2d at 1545 (affirming district court's selection of prime rate; noting that "it is not necessary that a patentee demonstrate that it borrowed at the prime rate in order to be entitled to prejudgment interest at that rate"); *Fresenius*, 2008 WL 928535, at *3.

## C. Compounding is Necessary to Compensate the Patent Holder.

Additionally, "in applying prejudgment interest, courts have recognized that compounding is necessary to fully compensate the patentee." *Fresenius*, 2008 WL 928535, at *2 (citation omitted). "Because a patentee's damages include the foregone use of money, compounding is needed to account for the time value of money." *Id.* "Thus, courts have approved annual compounding and even daily compounding." *Id.* In *Atmel*, for example, the Court ordered prejudgment interest on the reasonable royalty judgment to be compounded quarterly, because the evidence showed that "royalty agreements are typically paid on a quarterly basis." *Atmel Corp.* 202 F. Supp. 2d at 1101.

## D. STI's Calculation of Prejudgment Interest.

In this case, an award of prejudgment interest, at the prime rate and compounded annually, is necessary to compensate STI adequately for APC's infringement. And, interest should be calculated on both the damages awarded by the jury and the supplemental damages requested above.

Yet, as indicated, APC has not yet accounted for its infringing sales after December 31, 2013. Therefore, in this motion, STI only is presenting evidence of the prejudgment interest calculated on the damages awarded by the jury for infringing sales through December 31, 2013, which will allow APC to comment on the (1) STI's entitlement to prejudgment interest, and (2) the applicable rate. As soon as APC accounts for infringing sales after December 31, 2013, STI will update its calculation of prejudgment interest, using the same methodology as set forth below.

Submitted with this motion is the declaration of STI's damages expert Brian Napper. Mr. Napper calculated prejudgment interest for the period of APC's infringement found by the jury, December 18, 2016 through December 31, 2013. First Napper Prejudgment Interest Decl. at ¶ 3. Mr. Napper calculated prejudgment interest at the prime rate for several reasons. First, Mr. Napper concluded that it is likely that the payment of royalty damages by APC when the

infringing sales were made would have reduced STI's need to borrow money over the years in question. In his view, the prime rate is a reasonable surrogate for the interest rate STI would have paid for an unsecured loan.[5] *Id.* at ¶ 11. *See, e.g., IMX, Inc. v. Lendingtree, L.L.C.,* 469 F.Supp.2d 203, 227 (D. Del. 2007) (prime rate provides the best compensation to a corporate patentee because it "represents the cost of borrowing money, which is 'a better measure of the harm suffered as a result of the loss of the use of money over time' " (citations omitted)).

Second, Mr. Napper considered the failure of APC to pay royalties when the infringing sales were made to be similar to a loan from STI. As stated in several cases, the prime rate is the most accurate estimate of the interest rate that STI would have charged APC for a loan since it is the "rate charged by banks to its most credit-worthy customers." *Nikko Materials*, 2006 U.S. Dist. LEXIS 3700 at *11-13; *Fresenius*, 2008 WL 928535, at *3-4; *Atmel Corp.*, 202 F. Supp. 2d at 1101 (prime rate loan to competitor is "more than generous"). Therefore, Mr. Napper considered the prime rate to be an appropriate surrogate for the rate STI would have earned if it had made a "loan" to APC. *Id.* at ¶ 12.

To calculate prejudgment interest, Mr. Napper first determined the average prime rate for each year during the damages period. *Id.* at ¶¶ 9, 16, Attachment 1. Then he applied that average prime rate to the damages separately awarded for infringing sales of the AP7900 and AP8900 model vertical PDUs for that year. *Id.* at ¶ 17, Attachment 2. Interest began to accrue one month after the completion of each year and was compounded annually.

For example, in 2011, the damages awarded on infringing sales of the AP7900 series PDU were $770,268, which was multiplied by the average prime rate of 3.25% to get the interest

---

[5] Mr. Napper observed that STI, in fact, did borrow money on its secured and guaranteed line of credit during the years covered by the damages period in this case, and paid interest at various rates. First Napper Prejudgment Interest Decl. at ¶ 8. The amount of prejudgment interest at the prime rate ($1,397,437) is slightly higher than the interest would be if calculated at the rate STI paid on its secured and guaranteed line of credit.

total for AP7900 damages in 2011 of $25,034. *Id.* Interest was compounded for the years 2013 and through August 8, 2014.

Mr. Napper's use of the average annual prime rate, and his decision that interest should be compounded annually, both are reasonable and fully comport with the facts of the instant case and applicable law. *See e.g., Lam*, 718 F.2d at 1066 (applying prime rate); *Fresenius*, 2008 WL 928535, at *3 (same); *Atmel*, 202 F. Supp. 2d at 1101 (compounding interest both quarterly and monthly according to expected receipt of the two different sets of payments).

Accordingly, STI requests that the Court award prejudgment interest as follows:

- In the amount of $1,397,437, which represents interest through August 8, 2014 on damages awarded for infringing sales for the period from December 18, 2006 through December 31, 2013;
- In an amount to be determined on damages for sales through December 31, 3013 for the period of time between the entry of judgment on August 8, 2014, and the entry of any amended judgment that might be entered in the future; and
- In an amount to be determined on supplemental damages for sales during the period from January 1, 2014 through the date final judgment is entered.

## III.  CONCLUSION.

For the foregoing reasons, STI respectfully requests that the Court award to STI supplemental damages from January 1, 2014 through the date final judgment is entered, along with prejudgment interest on the entire damages amount, at the prime rate, compounded annually. STI will supplement this motion with the precise amount of supplemental damages and prejudgment interest as those figures become available.

Dated: August 22, 2014.

                                    Respectfully submitted,

**HOLLAND & HART LLP**

/s/*James E. Hartley*

James E. Hartley
Conor F. Farley
HOLLAND & HART LLP
jhartley@hollandhart.com
cfarley@hollandhart.com

Matthew B. Hippler (Nevada SBN 7015)
HOLLAND & HART LLP
mhippler@hollandhart.com

Shane P. Coleman
HOLLAND & HART LLP
spcoleman@hollandhart.com

Donald A. Degnan
Timothy P. Getzoff
HOLLAND & HART LLP
ddegnan@hollandhart.com
tgetzoff@hollandhart.com

Michael R. Henson
PERKINS & COIE LLP
mhenson@perkinscoie.com

Attorneys for Plaintiff
SERVER TECHNOLOGY, INC.

CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(b) and District of Nevada EFP, Section IV, I hereby certify that on August 22, 2014, I caused the foregoing to be filed with the Clerk of Court by electronic means using the CM/ECF System, which will transmit Notice of Electronic Filing by electronic means to each counsel of record listed below:

William E. Peterson
Janine C. Prupas
Suellen Fulstone
SNELL & WILMER
50 West Liberty Street, Suite 510
Reno, NV 89501
wpeterson@swlaw.com
jprupas@swlaw.com
sfulstone@swlaw.com

Terrence J. Truax
Reginald J. Hill
Michael G. Babbitt
Chad J. Ray
JENNER & BLOCK
353 North Clark Street
Chicago, Illinois 60654
ttruax@jenner.com
rhill@jenner.com
mbabbitt@jenner.com
cray@jenner.com

Nick G. Saros
JENNER & BLOCK
633 West 5th Street, Suite 3500
Los Angeles, CA 90071-2054
nsaros@jenner.com

Peter H. Hanna
Jenner & Block
919 Third Ave., 37th Floor
New York, NY 10022
phanna@jenner.com

Attorneys for Defendant AMERICAN POWER CONVERSION CORPORATION

By:   */s/James E. Hartley*
James E. Hartley
HOLLAND & HART LLP

7056496_3